In re MANAGED CARE LITIGATION.

This Document Relates To All Cases.

No. MDL 1334,
No. 00–1334–MD.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 11, 2000.

*ORDER GRANTING IN PART AND DE-NYING IN PART VARIOUS DE-FENDANTS' MOTIONS TO COM-PEL ARBITRATION*

MORENO, District Judge.

This multi-district litigation involves two separate categories of plaintiffs who have filed suit against various insurance companies that provide managed care. One group of plaintiffs consists of subscribers (patients) who allege causes of action against managed care companies under RICO, ERISA, and common law civil conspiracy. The other group of plaintiffs consists of providers (doctors) who allege causes of action against managed care companies under various legal theories, including RICO, ERISA, *quantum meruit,* breach of contract, federal clean claim payment regulations, unjust enrichment, and state prompt pay statutes.

Certain defendants seek to compel certain plaintiffs to arbitrate the issues raised in this lawsuit, based upon arbitration clauses contained in the contracts that form the basis of the plaintiffs' claims. This Order shall determine which plaintiffs are bound by contract to use arbitration as the forum to resolve certain claims asserted against certain managed care companies.

## WHETHER TO COMPEL ARBITRATION

### I. Threshold Matters to Be Resolved Prior to Analyzing Each Arbitration Clause

Prior to deciding each of the defendants' motions to compel arbitration individually, the Court must address certain threshold matters that relate to all of the motions to compel arbitration. These are: (A) the Federal Arbitration Act's (the "FAA's" or the "Act's") strong presumption in favor of arbitration, (B) whether ERISA claims may be arbitrated, (C) whether allegations of conspiracy and aiding and abetting may be arbitrated, absent a contract to arbitrate between the parties, (D) whether a nonsignatory to an arbitration clause may be compelled to arbitrate due to the relationship between the nonsignatory and a signatory to the arbitration agreement, (E) the impact of the Eleventh Circuit decisions in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir. 1998), and *Randolph v. Green Tree Fin. Corp.,* 178 F.3d 1149 (11th Cir.1999) *rev'd in part Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), (F) whether class action implications affect whether to compel arbitration, and (G) whether the doctrine of unconscionability is useful in determin-

ing the validity of the arbitration clauses at issue. After addressing each of these matters, the Court shall analyze each motion to compel separately to determine which, if any, claims must be arbitrated.

### A. The Federal Arbitration Act's Presumption in Favor of Arbitration

Section 4 of the FAA provides in relevant part:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... [T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

■ The FAA establishes a strong federal policy in favor of arbitration and creates "a body of substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act." *Moses H. Cone Memorial Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The scope of the Act's provisions concerning the validity of arbitration clauses reaches to the farthest limits of Congress' power under the Commerce Clause. *Paladino*, 134 F.3d at 1060. There is no dispute that the defendants in this action are engaged in interstate commerce, and accordingly, the Act applies to the present motions to compel arbitration.

Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court in *Cone* instructs, this language reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Cone*, 460 U.S. at 24, 103 S.Ct. 927. "Any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Id.* at 24–25, 103 S.Ct. 927.

■ The strong federal policy in favor of arbitration applies to statutory claims with equal force. *E.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). If the plaintiffs' allegations "touch matters" covered by the arbitration agreement, then those claims must be arbitrated, irrespective of how the allegations are labeled. *Id.* at 625 n. 13. This approach furthers the Act's strong presumption in favor of arbitration. *Id.* at 626, 105 S.Ct. 3346 ("[T]he parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

### B. Whether ERISA Claims Are Subject to Arbitration

The first threshold issue presented by the various motions to compel arbitration, raised in both provider and subscriber track motions to compel, is whether ERISA claims may be arbitrated. While the Supreme Court has ruled that RICO and antitrust claims are subject to arbitration, *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding RICO claims arbitrable); *Mitsubishi*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (holding antitrust claims arbitrable), there has been no such determination with respect to ERISA claims. The Eleventh Circuit has not yet ruled upon the issue, but many circuit courts have ruled that ERISA claims are arbitrable. *Williams v. Imhoff*, 203 F.3d 758 (10th Cir.2000); *Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir.1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3rd Cir.1993); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116 (2nd Cir.1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds*, 847 F.2d 475 (8th Cir.1988).

Plaintiffs argue that the Eleventh Circuit would follow the Ninth Circuit decision, *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984), which holds that ERISA claims are not arbitrable. The *Amaro* ruling rests upon the assumption that "[a]rbitrators, many of whom are not lawyers, ... lack the competence to interpret and apply statutes as Congress intended." *Id.* at 750 (citation omitted).

■ This Court rejects the plaintiffs' argument and finds that ERISA claims are subject to arbitration, in view of the Act's strong presumption in favor of arbitration discussed above. The Court also finds persuasive Supreme Court rulings finding that arbitration is an appropriate forum for RICO and antitrust injuries to be vindicated. An arbitrator can resolve ERISA claims with the same skill, precision, and competence as RICO or antitrust claims. Moreover, there is no language in ERISA that leads to a finding that Congress did not intend to have ERISA claims arbitrated.

The limiting factor with respect to this ruling that ERISA claims are subject to arbitration is that the arbitration clause at issue must afford the plaintiffs the opportunity of meaningful relief in an arbitration proceeding. *Paladino*, 134 F.3d at 1062. This limiting factor will be addressed below in Section I(E), where the Court will address the impact of two Eleventh Circuit decisions, *Paladino* and *Randolph*, upon the instant motions to compel arbitration. This limiting factor also will be addressed with respect to certain arbitration clauses individually in Section II of this Order.

### C. Whether Allegations of Conspiracy and Aiding and Abetting May Be Arbitrated Where There is No Contract to Arbitrate Between the Parties

The next threshold issue presented by both subscriber and provider track motions to compel arbitration is whether conspiracy and aiding and abetting allegations may be arbitrated where there is no contract to arbitrate between the parties. This scenario occurs, for example, where Plaintiff A sues Defendants B, C, and D alleging conspiracy to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d), and for seeking to aid and abet and for aiding and abetting violations of 18 U.S.C. § 1962(a) and (c) within the meaning of 18 U.S.C. § 2. Plaintiff A has agreed to resolve such claims with Defendant B through arbitration, but has no contractual relationship with Defendants C and D— who have no relation to Defendant B except that all three defendants are separate operators of separate managed care companies.

Plaintiffs posit that there can be no arbitration of the conspiracy and aiding and abetting claims against nonsignatories (Defendants C and D in the above example) because the plaintiffs have not contracted with these parties to arbitrate such disputes. *E.g., Morewitz v. West of England*, 62 F.3d 1356, 1363 (11th Cir.1995) (*quoting In re Talbott Big Foot, Inc.*, 887 F.2d 611, 612 (5th Cir.1989) ("We are unaware of any federal policy that favors arbitration for parties who have not contractually bound themselves to arbitrate their disputes.")). Defendants argue that these claims must be arbitrated, relying upon the Eleventh Circuit reasoning in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir.1999).

■ Notwithstanding the general rule that only parties who agree to arbitrate may be compelled to do so, the Eleventh Circuit has ruled that there exist limited circumstances where a matter will be compelled to arbitration, absent a signed agreement between the parties. *Id.* at 947 (*citing Sunkist Soft Drinks, Inc. v. Sunkist Growers Inc.*, 10 F.3d 753 (11th Cir. 1993)). These are: (1) equitable estoppel, (2) agency or related principles concerning signatory defendants and nonsignatory defendants, and (3) third party beneficiary relationships. *MS Dealer*, 177 F.3d at 947.

' Defendants' reliance on *MS Dealer*, where the court found equitable estoppel existed, is misplaced. That case involved a consumer transaction where Ms. Franklin executed a "Buyers Order" to purchase a vehicle from Jim Burke Motors, Inc. The Buyers Order incorporated by reference a Retail Installment Contract, which Ms. Franklin purchased for $990.00, and also contained a valid arbitration clause. Ms. Franklin filed suit after purchasing the car, asserting claims for breach of contract, breach of warranty, fraud, and civil conspiracy between signatory defendant Jim Burke Motors Inc. and nonsignatory defendant MS Dealer. Among other allegations, Ms. Franklin claimed that both parties shared in the excessive profits from the Retail Installment Contract. The only claims asserted against MS Dealer related to the Retail Installment Contract. MS Dealer moved to compel arbitration, based upon the Buyers Order arbitration clause, and Ms. Franklin objected on the ground that there was no signed agreement to arbitrate between herself and MS Dealer. *Id.* at 944–45.

■ The *MS Dealer* court found that Ms. Franklin was equitably estopped from objecting to arbitration of the dispute under both circumstances where equitable estoppel arises. First, equitable estoppel arises where a signatory to a written agreement must rely on the terms of the agreement in asserting its claims against the nonsignatory. *Id.* at 947 (*citing Sunkist*, 10 F.3d at 757). Under this form of equitable estoppel, there also must be a close relationship between nonsignatory and signatory defendants, which did exist between signatory defendant Jim Burke Motors Inc. and nonsignatory defendant MS Dealer. *See Sunkist*, 10 F.3d at 757. Second, equitable estoppel applies where there is interdependence and concerted misconduct between the nonsignatory and signatory defendants. Otherwise, the arbitration proceeding between the two signatories would be rendered meaningless and the federal policy in favor of arbitration thwarted. *MS Dealer*, 177 F.3d at 947.

In the instant action, the plaintiffs allege violations against parties bound to arbitrate ("signatories") and seek to hold nonsignatories liable for conspiracy and aiding and abetting. Some signatory defendants have valid arbitration clauses that will be enforced, while other signatory defendants will litigate before the undersigned either for lack of an arbitration agreement or an invalid arbitration agreement. The issue before the Court is whether the nonsignatory defendants may compel arbitration, relying upon the doctrine of equitable estoppel.

■ With respect to the first way to find equitable estoppel discussed above, there is a distinguishing factor between this case and *MS Dealer* and *Sunkist*; namely, the relationship between signatory defendants and nonsignatory defendants. In *MS Dealer*, the defendants worked in concert to sell vehicles with retail installment contracts included in the purchase agreement for the vehicle. In *Sunkist*, which involved licensing issues, the nonsignatory, Del Monte, acquired all of the stock of signatory Sunkist Soft Drinks. The instant action is distinguishable because the signatory managed care company and nonsignatory manage care companies do not have the requisite "close relationship" needed to find equitable estoppel. *Sunkist*, 10 F.3d at 757.

With respect to the second way to find equitable estoppel, this Court finds the doctrine inapplicable to the current action. The *MS Dealer* court was concerned with thwarting the FAA by a scenario where the nonsignatory defendant would litigate the same action in federal court that the signatory defendant would arbitrate concurrently. The present action is much more complex, involving many more parties. The concern that the FAA will be thwarted does not exist in the present scenario. In fact, this Court is painstakingly following the FAA's mandate to arbitrate whatever the parties

agree to arbitrate, even though it will lead to concurrent proceedings. While the Court believes that it would be most efficient to have all claims heard either in Federal court or in front of an arbitrator due to the strong likelihood of concurrent proceedings before itself and multiple arbitrators, the Supreme Court has instructed otherwise. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that Federal Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."). As such, the Court will compel arbitration of whichever claims are deemed arbitrable and retain jurisdiction to hear all other claims.[1]

Here, it is inevitable, based upon this Order, that some signatory defendants will be forced to arbitrate certain claims, while the same claims will be litigated before the undersigned concurrently. This Court will be hearing the same RICO issues (including RICO conspiracy and aiding and abetting by nonsignatories) with respect to defendants that do not have arbitration clauses in their agreements with the plaintiffs, or whose arbitration clauses are ruled invalid. By way of example, Humana either does not have an arbitration clause in its agreements with providers or it does not move to compel arbitration. The plaintiffs allege conspiracy and aiding and abetting against the other named defendants in this action, stemming from Humana's contractual relationship with the plaintiffs. All nonsignatory defendants to the Humana agreements will be forced to defend the conspiracy and aiding and abetting claim in front of the undersigned. Accordingly, this Court does not find the

justification necessary (i.e. the thwarting of the FAA) to allow nonsignatories to an arbitration agreement to compel arbitration based upon the doctrine of equitable estoppel.[2]

### D. Whether a Nonsignatory to an Arbitration Agreement May Be Compelled to Arbitrate

A related issue concerning nonsignatories to arbitration agreements arises (1) where a plaintiff sues a parent company, concerning an agreement between the plaintiff and the parent's subsidiary (or affiliate), where only the subsidiary has contracted with the litigant to arbitrate; and (2) where a nonsignatory plaintiff sues a signatory defendant, based upon an agreement (that contains an arbitration clause) between the defendant and a third party to whom the plaintiff is affiliated. The principles enumerated by the Eleventh Circuit in *MS Dealer* for justifying a nonsignatory to arbitrate discussed above apply with equal force to these issues, but lead to a different result. *MS Dealer*, 177 F.3d at 947.

The Court finds that under either theory of equitable estoppel, as well as under the agency and third party beneficiary exceptions, a nonsignatory parent should be compelled to arbitrate where either (a) the signatory subsidiary or affiliate is compelled to arbitrate, or (b) the nonsignatory parent benefits from the contractual relations of its subsidiary's relationship with the plaintiffs—irrespective of whether the subsidiary is a party to the lawsuit. Likewise, the Court finds that a nonsignatory plaintiff is bound to arbitrate disputes against a signatory defendant, where the plaintiff brings suit based upon

1. Moreover, as the Eleventh Circuit instructs in *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281 (11th Cir.1989), each party shall have individualized arbitration. There shall be no bundling of the various named plaintiffs' claims that this Court deems arbitrable, unless an arbitrator rules otherwise. The Court takes no position on

whether any of these arbitrations may become class action arbitrations.

2. The Court also does not find an agency or third party beneficiary relationship present to compel arbitration between the nonsignatories. *MS Dealer*, 177 F.3d at 947.

an agreement between the defendant and a third party to whom the defendant is affiliated.

### E. The Impact of the of the Eleventh Circuit Holdings in Paladino and Randolph

The next issue before the Court is the Eleventh Circuit's rulings in *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998), and *Randolph v. Green Tree Fin. Corp.*, 178 F.3d 1149 (11th Cir.1999) *rev'd in part Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Not surprisingly, these cases have received quite a bit of attention from the litigants in this action. Based upon the holdings in these two cases, the plaintiffs seek to negate contractual obligations to arbitrate disputes between the parties because the arbitration forum does not provide meaningful relief for the plaintiffs' statutory claims. Defendants argue that the cases are distinguishable and that an arbitration forum can meaningfully resolve all of the plaintiffs' claims.

Despite the FAA's strong presumption in favor of arbitrating all disputes as agreed between the parties, the Eleventh Circuit has refused to permit arbitration of certain statutory disputes under limited circumstances. *See Paladino*, 134 F.3d at 1062 ("[T]he arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies."). In *Paladino*, the court refused to enforce the parties' employment agreement to arbitrate all disputes between the parties. In relevant part, the arbitration agreement permitted the arbitrator to award damages for breach of contract, but prohibited the arbitrator from awarding any other type of damages. *Id.* at 1056.

The *Paladino* court based its holding on two grounds. First, the court found that the clause prohibiting extra contractual damages denied the plaintiff of any meaningful relief for her Title VII claims.

"This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief." *Id.* at 1062. Second, the court found that the statutory policy behind Title VII would be frustrated further by the parties' agreement to arbitrate through the American Arbitration Association ("AAA"), which charges high fees—$2,000 in this case. "[A] clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII." *Id.*

In *Randolph*, the plaintiff alleged violation of the Truth in Lending Act ("TILA") because the defendant required her to obtain "vendor's single interest" insurance in connection with the financing of the purchase of her mobile home, but did not include the requirement in its TILA disclosure. The arbitration clause in the retail installment agreement governed all disputes between the parties, and granted the arbitrator authority to award money damages, declaratory relief, and injunctive relief. However, the arbitration clause made no mention of what organization shall conduct the arbitration, whether the parties were to share the expenses of the arbitration, or what the filing fees of the arbitration would be. *Randolph*, 178 F.3d at 1151.

In holding the arbitration clause unenforceable, the *Randolph* court was concerned that the plaintiff's statutory rights under TILA would not be vindicated in an arbitration forum due to the exorbitant cost of initiating arbitration as compared to the "small sum" of plaintiff's claims. *Id.* at 1158 ("[T]he arbitration clause … fail[ed] to provide minimum guarantees required to ensure that Randolph's ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrator's fees, or other high costs of arbitration."). Perhaps realizing the potentially far reaching effect of its holding, the court distinguished this "small consumer transaction," as well as the employment agree-

ment in *Paladino,* from other contexts, such as commercial franchise agreements. *Id.* at 1159.

▌ The issue before this Court is how these cases relate to both the provider track and subscriber track agreements to arbitrate. Beginning with the provider track plaintiffs, they argue that their statutory rights under RICO and ERISA will not be vindicated in an arbitration forum, and that they will not be able to obtain meaningful statutory relief through arbitration. The burden of establishing this proposition rests with the provider plaintiffs. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); *see also Shearson/American Express,* 482 U.S. at 225–26, 107 S.Ct. 2332.

The issues raised by *Paladino* concerning limitation of an arbitrator's authority to award extra contractual damages will be addressed individually below in Section II, where the Court will determine whether any of the arbitration agreements at issue prevent meaningful relief in an arbitration forum due to a limitation on extra contractual damages.

▌ With respect to the *Randolph* (and to a lesser extent *Paladino.*) concern that steep filing fees and costs of arbitration will prevent meaningful relief through arbitration, the Court declines the provider track plaintiffs' invitation to expand the Eleventh Circuit holdings. The Eleventh Circuit decision in *Randolph* made clear that its holding was limited to small consumer transactions concerning small sums of money, as well as Title VII claims in employment relationships. This Court finds the relationship between sophisticated groups of doctors and managed care companies, where the doctors contract to provide health care to large groups of patients, quite distinguishable.

Another distinguishing factor between *Randolph* and the instant action is the alleged amount in controversy. In *Randolph,* the amount in controversy was a "small amount" stemming from a failure to disclose a requirement to purchase vendor insurance in connection with the purchase of a mobile home. In the instant action, the provider plaintiffs attempt to persuade the court that their statutory claims are too small to combat the hefty costs of arbitration. This argument is unpersuasive because each provider plaintiff alleges multiple instances of statutory violations over an extended period of time. In aggregate, each provider plaintiff allegedly has suffered considerable harm. These aggregate claims may be arbitrated by each plaintiff who has signed a valid and enforceable arbitration agreement.

Moreover, today the Supreme Court reversed in part the *Randolph* decision, ruling that an arbitration agreement that is silent with respect to arbitration costs does not render the agreement unenforceable. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 521–22, 148 L.Ed.2d 373 (2000) ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidating of an arbitration agreement."). While the Supreme Court did acknowledge that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum[,]" *id.* at 10, the Court was "mindful of the FAA's purpose to reverse the longstanding judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts." *Id.* at 9 (quotation and citation omitted).

In total, the doctors are sophisticated individuals, not consumers alleging TILA violations in connection with the purchase of a mobile home or employees suing under Title VII. The Court is unpersuaded that the provider track plaintiffs' statutory claims will not be vindicated in an arbitration forum due to excessive filing fees and costs. *Green Tree Fin. Corp.,* 531 U.S. 79, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (stating that the party resisting arbitration bears the burden of proving that the

claims at issue are unsuitable for arbitration); *see also Williams v. Cigna*, 197 F.3d 752, 763–64 (5th Cir.1999) (enforcing arbitration clause absent evidence that plaintiff cannot afford to pay half the filing fees). To rule otherwise would expand the Eleventh Circuit's holdings and frustrate the FAA's strong presumption in favor of arbitration.

In contrast, the subscriber plaintiffs are in a better position to argue that their claims are analogous to the consumer transaction or employment relationships addressed by the Eleventh Circuit. The subscriber plaintiffs are individuals who have contracted, through their employer, to receive managed care from the defendants. They allege statutory violations stemming from being overcharged for the price of their managed care due to misrepresentations and omissions. Because there is only one subscriber defendant who seeks to compel arbitration, it is most efficient for the Court to acknowledge the potential analogy, and determine whether Plaintiff Hitsman may avail herself of the *Randolph* holding now. (All other issues concerning Plaintiff Hitsman's arbitration clause will be addressed below in Section III.)

▮ Plaintiff Hitsman argues that her agreement to arbitrate disputes with PacifiCare–Oklahoma will deny her the ability to vindicate her statutory claims. However, in contrast to the *Randolph* arbitration agreement that did not discuss which organization would arbitrate or how costs would be shared, Plaintiff Hitsman's arbitration agreement is governed by JAMS/Endispute and states that the fees and expenses of the arbitrator and neutral administrator will be divided equally. The filing fee for a JAMS/Endispute arbitration is $250. Accordingly, the concerns raised in *Randolph* involving steep filing fees and uncertainty as to whom shall bear the brunt of these unknown fees do not exist here. Moreover, the Court is unpersuaded that the amount in controversy for Plaintiff Hitsman is such a "small sum" as

the plaintiff's injury in *Randolph*. Plaintiff Hitsman has failed to meet her burden on this point, as well as her burden of establishing that her statutory rights will not be vindicated in an arbitration forum due to excessive filing fees. The *Randolph* holding will not assist Plaintiff Hitsman in opposing the motion to compel arbitration.

### F. Whether Class Action Implications Affect Whether to Compel Arbitration

The next issue concerning both subscriber and provider cases concerns the potential that this Court may certify this case as a class action. Named plaintiffs who may be forced to arbitrate their claims seek to prevent arbitration on the ground that this multi-district litigation is a class action, and that other, unnamed plaintiffs will surface who are not required to arbitrate. Following this argument, the Court should not compel arbitration for the named plaintiffs who agreed to arbitrate.

This argument is misguided. The Court is only concerned with deciding the issues before it presently, not the issues of hypothetical plaintiffs in a potential class action lawsuit. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). If other plaintiffs come forward who are not bound by an agreement to arbitrate, the Court will address such issue when ripe.

▮ Moreover, class action allegations do not prevent the named plaintiffs from being forced to compel arbitration when such plaintiffs have agreed to arbitrate all of their disputes with the defendants. *Caudle v. American Arbitration Ass'n*, 230 F.3d 920 (7th Cir.2000) ("A procedural device aggregating multiple persons' claims in litigation does not entitle anyone to be in litigation; a contract promising to arbitrate the dispute removes the person from those eligible to represent a class of litigants."); *see also Johnson v. West Suburban Bank*, 225 F.3d 366, 368 (3rd Cir.2000)

(holding that arbitration of plaintiff's statutory claims is required even where the arbitration clauses may prevent the bringing of class action lawsuits).

### G. Whether the Doctrine of Unconscionability Is Useful in Determining the Validity of the Arbitration Clauses at Issue

■■■ Lastly, at oral argument on October 26, 2000, there was discussion of whether the arbitration clauses at issue are unconscionable contracts of adhesion. To prevail on this argument, the plaintiffs must show that the clauses are both procedurally and substantively unconscionable for the clauses to be deemed unenforceable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir.1989). "Procedural unconscionability exists when the individualized circumstances surrounding the transaction reveal that there was no 'real and voluntary meeting of the minds' of the contracting parties. Substantive unconscionability exists when the terms of the contractual provision are unreasonable and unfair." *Id.* (citations omitted).

■■■ Plaintiffs' unconscionability argument must be summarily dismissed because the Court finds there is nothing substantively unconscionable with an arbitration clause *per se. Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1351 (11th Cir.1986) ("[T]here is nothing inherently unfair or oppressive about arbitration clauses."). As discussed above, the Court intends to examine each arbitration clause to determine whether it is enforceable. The Court need not rule upon whether each arbitration clause is substantively unconscionable because an unfair or oppressive clause will not be enforceable under existing Supreme Court and Eleventh Circuit precedent governing arbitration clauses, irrespective of whether the clause is procedurally unconscionable.

With these threshold issues addressed, the Court now examines each of the defendants' motions to compel arbitration.

### II. ANALYSIS OF INDIVIDUAL ARBITRATION CLAUSES TO DETERMINE WHETHER TO COMPEL ARBITRATION IN PROVIDER TRACK CASES

#### A. United

UnitedHealthcare, Inc. and UnitedHealth Group Incorporated f/k/a United HealthCare Corporation ("United") seek to compel arbitration of all claims raised by provider plaintiffs Manual Porth, M.D. and Glenn L. Kelly, M.D. With respect to Dr. Porth, the United Defendants proffer a United HealthCare of Florida Medical Group Participation Agreement between United HealthCare of Florida and Community Orthopaedics and Pain Management, Inc.[3] The arbitration clause provides in relevant part that all matters arising from the agreement shall be arbitrated, but limits the arbitrator's authority by preventing the arbitrator from awarding extra contractual damages, including punitive or exemplary damages. Moreover, the arbitration agreement includes a one year statute of limitations to bring the claims in arbitration once there is written notice of the dispute.

The prohibition on extra contractual damages is precisely the type of arbitration agreement that was found unenforceable in *Paladino*. Such an arbitration agreement prevents Dr. Porth from obtaining any meaningful relief for his statutory claims. Additionally, the one year statute of limitations raises grave concerns that Dr. Porth's statutory claims will not be adjudicated appropriately in an arbitration forum. *Paladino*, 134 F.3d at 1058

---

**3.** For the reasons discussed in Section I(D), Dr. Porth may not frustrate the agreement to arbitrate by claiming that he is a nonsignatory to the agreement. Dr. Porth's allegations "touch matters" relating to this arbitration agreement, and Dr. Porth is affiliated with Community Orthopaedics of Pain and Management, Inc. *Mitsubishi*, 473 U.S. at 625 n. 13, 105 S.Ct. 3346; *MS Dealer*, 177 F.3d at 947.

(*citing Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir.1994)).

Accordingly, the Court will not compel arbitration of Dr. Porth's claims arising under RICO, ERISA, federal clean claim payment regulations, state prompt pay statutes, unjust enrichment, and state prompt pay statutes. However, the Court is not persuaded that the statute of limitations provision is a strong enough factor, on its own, to overcome the FAA's strong presumption in favor of arbitration. Thus, the Court will compel arbitration of Dr. Porth' breach of contract and *quantum meruit* claims, as these claims, if successful, would lead to contractual damages.

United moves to compel Dr. Kelly to arbitrate based upon a United HealthCare of Colorado, Inc. Physician Participation Agreement between United HealthCare of Colorado and Dr. Kelly.[4] The arbitration provision is identical to the United arbitration agreement discussed above concerning Dr. Porth, except that Dr. Kelly's arbitration clause only prevents the arbitrator from granting punitive or exemplary damages. The arbitrator may award extra contractual damages.

The Court finds that the limitation on punitive or exemplary damages serves as a limitation on the types of statutory claims that may be adjudicated before an arbitrator. *Paladino*, 134 F.3d at 1062 ("[T]he arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies."). Dr. Kelly alleges RICO violations, which provide for treble damages. Treble damages are a form of punitive damages. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910–11 (3rd Cir.1991); *Pine Ridge Recycling, Inc. v. Butts County, Georgia*, 855 F.Supp. 1264, 1273 (M.D.Ga.1994); *cf. Shearson/American Express*, 482 U.S. at 240–41, 107 S.Ct. 2332 (indicating in dicta that treble damages are primarily remedi-

al and secondarily punitive). The Court also finds that the one year statute of limitations serves the function of limiting the ability for Dr. Kelly to obtain meaningful relief in an arbitration forum for his other statutory claims. Thus, the Court shall only compel arbitration of Dr. Kelly's breach of contract and *quantum meruit* claims.

There is one final contention raised by United that must be addressed. In an effort to compel arbitration and dismiss the instant action against Drs. Porth and Kelly, United has expressed a willingness to waive the arbitration clauses' limitations that prevent an arbitrator from awarding extra contractual damages and punitive or exemplary damages.[5] Principles of justice and fair play, however, lead to the conclusion that one party unilaterally cannot alter *post litem motam* terms of an agreement so that a case is dismissed. *Cf. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56–57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[I]f the contract says 'no punitive damages,' that is the end of the matter, for courts are bound to interpret contracts in accordance with the expressed intentions of the parties— even if the effect of those intentions is to limit arbitration."). The Court rejects United's attempted waiver.

### B. Foundation

Foundation Health Systems, Inc. ("Foundation") references four agreements that contain arbitration clauses in moving to compel plaintiff Dennis Breen, M.D. to arbitrate. Because three of the four agreements are enforceable, the Court shall compel Dr. Breen to advance all of his claims, except the conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies, in accordance with

---

**4.** Dr. Kelly's allegations against United "touch matters" relating to this agreement. *Mitsubishi*, 473 U.S. at 625 n. 13, 105 S.Ct. 3346.

**5.** No such waiver has been proffered concerning the statute of limitations provisions.

the parties' contracted arbitration agreement.

Foundation argues that an arbitration clause in the Sutter Agreement, entered into between Health Net and Sutter Independent Physicians as a Participating Medical Group, requires that Dr. Breen's claims be arbitrated.[6] This agreement calls for arbitration of all grievances between the parties. Costs are split between the parties, unless assessed differently by an arbitrator. Fees are advanced by the initiating party.

The one potentially objectionable part of this agreement is the mandate that fees are advanced by the initiating party. The initiate fee mandate may result in the concern raised in *Paladino* and *Randolph* that hefty fees would prevent meaningful relief. This concern dissipates because there are two other enforceable arbitration clauses without a provision mandating that the fees be advanced by the initiating party. The Court intends to order arbitration under the other two agreements so that Dr. Breen is not required to advance the fees as the initiating party.

The two other agreements that contain an arbitration clause are: (1) Physicians Services Agreement between Health Net and Foundation Health Systems Affiliates and Dr. Breen, and (2) Champus/Tricare Prime and Extra Professional Provider Agreement between Foundation Health Systems Affiliates and Dr. Breen. The Physicians Services Agreement calls for arbitration of claims arising in tort, contract, or otherwise. The arbitration shall be governed by the California Arbitration Act. The Champus/Tricare Agreement states that any problems or disputes relating to the agreement are to be arbitrated. The prevailing or substantially prevailing party's costs shall be borne by the other party.

Dr. Breen's allegations against Foundation are interrelated with the Physicians Services Agreement and the Champus/Tricare Agreement. Accordingly, the Court shall compel Dr. Breen to arbitrate all of his claims against Foundation, excluding conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies.

■ Lastly, for purposes of clarity to the future arbitrator, the Court finds unenforceable the fourth arbitration clause proffered by Foundation, located in the CHW Agreement between Foundation Health Systems Affiliates and CHW Medical Foundation as a Participating Medical Group. This arbitration agreement provides for a six month statute of limitations to bring arbitration, and divests the arbitrator of the ability to award punitive damages. For the various reasons addressed above, an arbitration clause with these limitations is unenforceable. Nonetheless, the Court will compel arbitration based upon the arbitration clauses found in the Physicians Services Agreement and the Champus/Tricare Agreement.

### C. WellPoint

WellPoint Health Networks Inc. ("WellPoint") seeks to compel arbitration of Dr. Breen's allegations against it based upon an arbitration agreement found in a Provider Agreement between Dr. Breen and WellPoint's subsidiary, Blue Cross of California. The arbitration clause provides first for a meet-and-confer process followed by arbitration. The clause governs any problems or disputes concerning the agreement. The arbitration shall be governed by AAA, and there is no limitation on damages or the types of disputes that may be brought.

6. For the reasons discussed in Section I(D), Dr. Breen may not frustrate the agreement to arbitrate by claiming that he is a nonsignatory to the agreement. Dr. Breen's allegations "touch matters" relating to this arbitration agreement, and Dr. Breen is affiliated with Sutter Independent Physicians. *Mitsubishi,* 473 U.S. at 625 n. 13, 105 S.Ct. 3346; *MS Dealer,* 177 F.3d at 947. Likewise, the Foundation Defendants are bound to this agreement to arbitrate due to their relationship with Health Net.

■  The Court finds nothing objectionable with this arbitration clause, in view of the Court's holdings in Section I. Dr. Breen's allegations against WellPoint arise from this agreement. There are no impediments that this Court is aware of that would prevent Dr. Breen from having all of his claims against WellPoint meaningfully resolved in an arbitration forum, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies.

### D. Prudential

Prudential Insurance Company of America ("Prudential") moves to compel arbitration of Dr. Porth's claims against it based upon a Participating Physician Agreement between Dr. Porth and Prudential Health Care Plan, Inc. and/or its affiliates. Dr. Porth opposes this motion on the ground that the arbitration mandate in this agreement is optional. An examination of this arbitration clause indicates that both parties should have proceeded differently in handling this dispute, but ultimately leads to the conclusion that Dr. Porth must follow the dispute resolution procedures agreed upon between the parties. For the reasons discussed below, Dr. Porth must mediate or arbitrate the allegations against Prudential presently before the Court, except for conspiracy and aiding and abetting allegations that stem from contractual relationships with other managed care companies.

Article IX of the Participating Physician Agreement, titled "Arbitration," contains three subsections. Section A provides that the exclusive methods for resolving disputes concerning the parties' agreement are "negotiation, mediation, and/or arbitration." Section B, "Mediation," states that if a dispute arises and the parties cannot settle the dispute through negotiation, then either party may elect to submit the dispute to a sole mediator. If the parties cannot resolve the dispute within sixty days from the start of mediation, "either party may elect to submit the dispute to binding arbitration." Lastly, Section C, "Arbitration," provides the ground rules for arbitration, none of which lead to a finding that the arbitration clause is unenforceable.

Dr. Porth bases his argument that the arbitration clause is optional on the use of "and/or" language in Section A, as well as the preamble to Section C, which states "If the parties agree to binding arbitration...."

The Court finds that this agreement provides for three different forms of dispute resolution to be the exclusive means for resolving disputes concerning the agreement. The use of "and/or" language in Section A documents that these forms of dispute resolution are options; an aggrieved party is not required by this agreement to avail himself of all three options. Either party may initiate the dispute resolution procedures through negotiation, or both parties can agree at the onset to arbitration. In the present scenario, neither party has elected for negotiation (which would lead to the unilateral power to compel mediation and then arbitration), and both parties do not agree to binding arbitration. Analysis of how both parties chose to proceed is instructive in determining how to resolve Prudential's motion to compel arbitration.

There is no record evidence that suggests that once Dr. Porth filed the instant action, Prudential attempted to avail itself of the dispute resolution procedures discussed above. Rather, Prudential unilaterally sought to compel arbitration, despite the fact that the arbitration clause requires both parties to agree to arbitrate. The only unilateral power Prudential possessed was to compel mediation after negotiation proved unsuccessful. A more prudent approach for Prudential, based upon the parties' agreement, would have been to initiate negotiation. While negotiation probably would have been futile, it would have given Prudential unilateral power to submit the dispute to mediation.

If mediation proved unsuccessful after sixty days, then Prudential would have the unilateral power to force arbitration, as per the parties' agreement.

Likewise, Dr. Porth did not follow the parties' agreed upon dispute resolution procedures. Dr. Porth would have been able to seek redress for all of his claims, excluding the conspiracy and aiding and abetting allegations stemming from contractual relationships with other managed care companies, by following the agreed upon dispute resolution procedures. If negotiations proved futile, Dr. Porth could have unilaterally compelled mediation. If mediation was unsuccessful after sixty days, then Dr. Porth would have had the unilateral power to compel arbitration.

■ At bottom, both parties agreed to have the aforementioned dispute resolution procedures exclusively govern their disputes. Accordingly, the Court must honor this commitment. Dr. Porth is ordered to follow the agreed procedures to resolve the present dispute, excluding conspiracy and aiding and abetting allegations that stem from contractual relationships with other managed care companies, which this Court retains jurisdiction to hear. Dr. Porth is free to attempt to negotiate. If such negotiation is unsuccessful, Dr. Porth is free to compel mediation or arbitration. Prudential already has consented to arbitration, but Dr. Porth has the option of mediation or arbitration—as the parties agreement only permits arbitration at this stage of the dispute resolution process by mutual agreement.

### E. CIGNA

CIGNA Corporation, Connecticut General Corporation, and CIGNA Health Corporation ("CIGNA") move to compel both Drs. Porth and Kelly to arbitrate their disputes with CIGNA. Dr. Porth consent-

ed to arbitration in a Physician Managed Care Agreement between Dr. Porth and CIGNA HealthCare of Florida, Inc.[7] Section O(2) of the agreement states that "[a]rbitration shall be the exclusive remedy for the settlement of disputes arising under this Agreement." There is no language limiting the authority of the arbitrator to award damages; fees and costs shall be split between the parties, and AAA governs.

■ The Court finds that Dr. Porth has agreed to arbitrate the present dispute, and that the arbitration clause does not raise any concerns with respect to its enforceability. There is no reason for this Court to frustrate the parties' agreement. All of Dr. Porth's claims can be meaningfully adjudicated in an arbitration forum, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies, which the Court retains jurisdiction to hear.

With respect to Dr. Kelly, CIGNA proffers two agreements that allegedly contain arbitration clauses in moving to compel arbitration. CIGNA directs the Court's attention to a Physician Managed Care Agreement between Dr. Kelly and CIGNA HealthCare of Colorado, Inc., and a Specialist Physician Agreement between Dr. Kelly and CIGNA HealthCare of Colorado, Inc.[8]

The Physician Managed Care Agreement contains a dispute resolution section that states that all grievances and complaints between the parties shall be resolved in accordance with the dispute resolution procedures in the applicable Program Requirements. The Program Requirements mandate that the parties negotiate to resolve disputes. If negotiation fails, the parties are referred back to the Physician Managed Care Agreement,

7. Dr. Porth's allegations against CIGNA "touch matters" relating to this agreement. *Mitsubishi,* 473 U.S. at 625 n. 13, 105 S.Ct. 3346.

8. Dr. Kelly's allegations "touch matters" relating to these agreements. *Mitsubishi,* 473 U.S. at 625 n. 13, 105 S.Ct. 3346.

which does not give any direction as to how to proceed if negotiation does not resolve the dispute.

The Specialist Physician Agreement does not suffer from the same infirmity. Section G of this agreement states that any dispute that arises concerning this agreement shall be sent to arbitration. AAA governs, and each party pays half the costs of the proceeding.

■ Thus, the Court is faced with a scenario where the Physician Managed Care Agreement does not require arbitration, while the Specialist Physician Agreement requires arbitration. Accordingly, Dr. Kelley's claims that relate to the Specialist Physician Agreement shall be arbitrated, except for conspiracy and aiding and abetting allegations that stem from contractual relationships with other managed care companies. Dr. Kelly's claims that relate to the Physician Managed Care Agreement may proceed before this Court.

### F. PacifiCare

PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. ("PacifiCare") seek to compel Dr. Breen to arbitrate his claims against PacifiCare, and bases its argument on two agreements: (1) Term Sheet between Sutter Health and Pacifi-Care of California, and (2) PMG Commercial Risk Agreement between Sutter Independent Physicians and PacifiCare of Florida. Dr. Breen counters by arguing that the Term Sheet does not apply to his claims against PacifiCare.

While the Court disagrees with Dr. Breen's contention, this issue is nondispositive of PacifiCare's motion to compel arbitration because the PMG Commercial Risk Agreement contains substantially the same language in its arbitration clause as the Term Sheet's arbitration clause.[9] As such, analysis of the PMG Commercial Risk

Agreement will be dispositive of whether Dr. Breen's claims shall be arbitrated or litigated in front of the undersigned.

Both arbitration agreements contain broad language indicating that the parties intended for "any controversy, dispute, or claim arising out of the agreement" to be arbitrated. However, both agreements prohibit the arbitrator from awarding punitive damages. Thus, we are faced with a potential *Paladino* situation, discussed earlier within the context of United's motion to compel arbitration (Section II(A)), where the plaintiff may not be able to obtain meaningful relief for allegations of statutory violations in an arbitration forum. However, this agreement is distinguishable from the United scenario because the PacifiCare agreements do not impose a shortened statute of limitations.

■ Accordingly, the Court will not compel Dr. Breen to arbitrate his RICO claims against PacifiCare due to the arbitrator's inability to impose punitive (treble) damages. All other statutory and non-statutory claims shall be arbitrated, except for the conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies.

### III. ANALYSIS OF INDIVIDUAL ARBITRATION CLAUSE TO DETERMINE WHETHER TO COMPEL ARBITRATION IN SUBSCRIBER TRACK CASE INVOLVING PACIFICARE

PacifiCare Health Systems, Inc. ("Pacifi-Care") also moves to compel subscriber track plaintiff Debbie Hitsman to arbitrate her claims raised in the instant litigation. PacifiCare bases its argument on an arbitration clause in a Master Group Service Agreement between MCI–WorldCom, Inc. ("MCI") and PacifiCare–Oklahoma. Plain-

---

9. For the reasons discussed in Section I(D), Dr. Breen may not frustrate the agreement to arbitrate by claiming that he is a nonsignatory to the PMG Commercial Risk Agreement, or the Term Sheet for that matter. Dr. Porth's allegations "touch matters" relating to both of these arbitration agreements, and he is affiliated with Sutter Independent Physicians. *Mitsubishi*, 473 U.S. at 625 n. 13, 105 S.Ct. 3346; *MS Dealer*, 177 F.3d at 947.

tiff Hitsman, as an MCI employee, became bound by the terms of the agreement when she enrolled in PacifiCare HMO.

The dispute resolution process in the Master Group Service Agreement provides in § 7.01 that a dispute "relating to the performance of this Agreement by Pacifi-Care and Member" shall first be submitted to an internal dispute resolution process to resolve the dispute in a non-adjudicative setting. § 7.02 provides that any dispute that is not resolved through the dispute resolution process described in § 7.01 "shall have the matter resolved by binding arbitration by a single arbitrator." JAMS/Endispute shall arbitrate, and its rules shall govern. The fees and expenses of the arbitrator and neutral administrator shall be divided equally among the disputants. Oklahoma law governs, and the Federal Arbitration Act also applies.

Plaintiff Hitsman raises various defenses to enforcement of the arbitration clause: (1) the arbitration clause is invalid under Oklahoma law, (2) the present dispute is beyond the scope of the arbitration clause, (3) ERISA claims are not subject to arbitration, and (4) the clause is unenforceable under *Randolph* and *Paladino*. For the reasons discussed in Sections I(B) and I(E) above, the ERISA and *Randolph* and *Paladino* arguments are rejected.

With respect to the issue of invalidity under Oklahoma law, the Court rejects that argument as well. Plaintiffs rely upon *Cannon v. Lane*, 867 P.2d 1235 (Okla.1993), where the Oklahoma Supreme Court invalidated an arbitration clause in an HMO contract because it was a contract with reference to insurance. Oklahoma law does not permit arbitration of claims between an insurer and the insured, "except where both the insured and insurer are insurance companies." 15 Okla.Stat. §§ 801–18.

In *Cannon*, a state employee sued Paci-fiCare of Oklahoma for failure to certify him for hemorrhoid surgery. The court relied upon the Oklahoma statute, as well as the common law policy that "agree-ments to submit future controversies to arbitration are contrary to public policy[,]" in refusing to enforce the arbitration clause. *Id.* at 1238.

■ The instant action is distinguishable from *Cannon*. That case dealt with Oklahoma state law issues, while this case deals with federal claims pursuant to the FAA. The Supreme Court has addresses this issue squarely in *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). In *Perry*, the Court distinguished state laws that concern the validity, revocability, and enforceability of contracts generally, and state laws that take their meaning precisely from the fact that a contract to arbitrate is at issue. The FAA must defer to the former, but preempts the latter. *Id.* at 491, 107 S.Ct. 2520 ("This clear federal policy places § 2 of the [FAA] in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way."). For example, a federal court would apply state law regarding duress and inducement in determining the validity of an arbitration clause because it concerns the validity and enforceability of the contract; however, the court would not concern itself with a state law that invalidates a specific class of cases, such as stock fraud or insurance claims. *Id.* at 489, 107 S.Ct. 2520. Accordingly, the Oklahoma statute that prevents arbitration of insurance claims is of no assistance to Ms. Hitsman in the instant action.

■ Plaintiff's remaining argument, that the dispute is beyond the scope of the arbitration clause, is also rejected. Plaintiff argues, by focusing on the language of § 7.01, that the arbitration clause is limited to the denial of claims relating to the performance of the agreement. § 7.02 only mandates arbitration for disputes "not resolved by the above appeals and dispute resolution processes. . . ." Plaintiff posits that her allegations concerning systemic

violations by PacifiCare (that speak to violations of RICO and ERISA) are not covered by the arbitration clause. PacifiCare counters by highlighting the preamble of § 7.02, "Any claim, controversy, dispute or disagreement...."

The difficulty with Plaintiff's argument is two-fold. First, this Court is not persuaded that the arbitration clause at issue is limited only to denial of claims, particularly in view of the broad, all-encompassing preamble of § 7.02. Second, and perhaps more importantly, the FAA has a presumption in favor of arbitration, as propounded by the Supreme Court. *Moses H. Cone Memo. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This Court is required to resolve any doubt "concerning the scope of arbitrable issues ... in favor of arbitration...." *Id.* at 24–25, 103 S.Ct. 927. Accordingly, this argument is rejected as well.

The parties entered into a valid arbitration agreement to resolve all disputes concerning the Master Group Service Agreement. Plaintiff must have all of her claims against PacifiCare resolved through arbitration.

### CONCLUSION

Therefore, it is

ADJUDGED that PacifiCare's Motion to Compel Arbitration of Subscriber Track Plaintiff Debbie Hitsman's claims (**D.E. No. 76**), filed on *July 14, 2000,* is GRANTED. All of Ms. Hitsman's claims against PacfiCare shall be arbitrated. It is also

ADJUDGED that PacifiCare's Motion to Compel Arbitration of Provider Track Plaintiff Dennis Breen, M.D.'s claims against PacifiCare (**D.E. No. 257**), filed on *September 8, 2000,* is GRANTED in part and DENIED in part. All of Dr. Breen's claims against PacfiCare shall be arbitrated, except for (1) RICO claims and (2) conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies. It is also

ADJUDGED that Prudential's Motion to Compel Arbitration of Provider Track Plaintiff Manual Porth, M.D.'s claims against Prudential (**D.E. No. 313**), filed on *September 22, 2000,* is GRANTED in part and DENIED in part. All of Dr. Porth's claims against Prudential shall be arbitrated, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies. It is also

ADJUDGED that Foundation's Motion to Compel Arbitration of Provider Track Plaintiff Dennis Breen, M.D.'s claims against Foundation (**D.E. No. 314**), filed on *September 22, 2000,* is GRANTED in part and DENIED in part. All of Dr. Breen's claims against Foundation shall be arbitrated, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies. It is also

ADJUDGED that United's Motion to Compel Arbitration of Provider Track Plaintiffs Manual Porth, M.D.'s and Glen L. Kelly, M.D.'s claims against United (**D.E. No. 319**), filed on *September 22, 2000,* is GRANTED in part and DENIED in part. The only claims that shall be arbitrated are Dr. Porth's and Dr. Kelly's claims concerning breach of contract and *quantum meruit.* All other claims shall be litigated before the undersigned. It is also

ADJUDGED that CIGNA's Motion to Compel Arbitration of Provider Track Plaintiffs Manual Porth, M.D.'s and Glen L. Kelly, M.D.'s claims against CIGNA (**D.E. No. 323**), filed on *September 26, 2000,* is GRANTED in part and DENIED in part. All of Dr. Porth's claims against CIGNA shall be arbitrated, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies. All of Dr. Kelly's claims against CIGNA stemming from the Specialist Physician Agreement shall be arbitrated, except for conspiracy

and aiding and abetting claims that stem from contractual relationships with other managed care companies. However, all of Dr. Kelly's claims against CIGNA stemming from the Physician Managed Care Agreement shall be litigated before the undersigned. It is also

ADJUDGED that WellPoint's Motion to Compel Arbitration of Provider Track Plaintiff Dennis Breen, M.D.'s claims against WellPoint (**D.E. No. 457**), filed on *October 25, 2000,* is GRANTED in part and DENIED in part. All of Dr. Breen's claims against WellPoint shall be arbitrated, except for conspiracy and aiding and abetting claims that stem from contractual relationships with other managed care companies.