**TENNESSEE MEDICAL ASSOCIATION**

v.

**BLUECROSS BLUESHIELD OF TENNESSEE, INC., et al.**

Court of Appeals of Tennessee, at Nashville.

April 28, 2006 Session.

Jan. 9, 2007.

Permission to Appeal Denied by Supreme Court June 25, 2007.

David L. Steed, Nashville, Tennessee; Edith M. Kallas, New York, New York, for the appellant, Tennessee Medical Association.

Gary C. Shockley, John S. Hicks, Mary Ann Miranda, Nashville, Tennessee, for the appellees BlueCross BlueShield of Tennessee, Inc., and Tennessee Health Care Network, Inc.

**OPINION**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and JERRY SCOTT, SR. J., joined.

Tennessee Medical Association filed this action against BlueCross BlueShield of Tennessee limiting its alleged case specifically to violations of the Tennessee Con-

sumer Protection Act. The trial court held that Tennessee Medical Association was bound by the compulsory arbitration provisions in the contracts between the member providers of the Association and BlueCross BlueShield of Tennessee. The trial court granted a Motion to Dismiss the Complaint on the basis that Tennessee Medical Association was not "affected" by the Tennessee Consumer Protection Act since it had no contract with BlueCross BlueShield and further that the Association alleged no "trade, commerce or consumer transaction" within the meaning of Tennessee Code Annotated sections 47–18–103(11), –104(a), –109(a)(1). We affirm the action of the trial court.

On April 25, 2002, Tennessee Medical Association ("TMA") filed the case at bar in the Chancery Court of Davidson County and simultaneously filed essentially the same complaint in a separate action against CIGNA Healthcare of Tennessee, Inc. ("CIGNA") and others (civil action No. 02–____–III) and then in yet another action filed on the same date made essentially the same allegations in a complaint against United Health Group, Inc. and United Healthcare of Tennessee, Inc. (civil action No. 02–1245–III).

Also on April 25, 2002, the same attorneys representing TMA filed a class action complaint involving the same allegations as are made in the case at bar on behalf of Zachary Rosenberg, M.D. and Dewayne P. Darby, M.D. versus BlueCross BlueShield of Tennessee ("BCBST") and Tennessee Healthcare Network, Inc. (civil action No. 02–1237–III) which action was dismissed by the trial court with the judgment of the trial court affirmed by this Court on November 29, 2006 (No. M2005–01070–COA–R9–CV).

These court actions by TMA are consistent with a nationwide attack on the actions of managed care entities. (*See In re* *Humana Inc. Managed Care Litig.*, No. 1334, 2000 U.S.Dist Lexis 5099 (J.P.M.L. Apr. 13, 2000), same being multi-district litigation, centralized in the Southern District of Florida.) The simultaneous complaints by TMA against United Healthcare Group, Inc., et al. and against CIGNA Healthcare of Tennessee, et al. were timely removed to federal court and, by the United States District Court of the Middle District of Tennessee, transferred to the Southern District of Florida to become part of multi-district litigation No. 1334 pending in the Florida Court. While the same attorneys representing BCBST in the case at bar also represent CIGNA in civil action No. 02–____–III, this case was not removed to federal court.

The procedural posture of the case at bar presents an interesting twist to what otherwise might be a rather simple disposition. The claims presented in the Complaint may well be preempted by federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (U.S.1987); *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995); *Parrino v. F.H.P., Inc.*, 146 F.3d 699, 704 (9th Cir.1998); 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure Jurisprudence* § 3722 (3d ed.1998).

■ It has long been held, however that a plaintiff is "master of the claim" when it comes to choosing his forum. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 387, 107 S.Ct. 2425, 96 L.Ed.2d 318 (U.S.1987). Just as clearly, a defendant is "master of removal" in determining whether or not to litigate the case in a state forum or attempt to remove it federal court. *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1260–61 (9th Cir.1988).

Only "complete preemption" under the "independent corollary rule" asserted in

*Caterpillar* or what the Eleventh Circuit Court of Appeals subcategorizes as "super preemption," *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir.1998); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211–13 (11th Cir.1999); *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir.1997); *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1012 (11th Cir.2003) deprives a state court of subject matter jurisdiction and mandates dismissal. *See MEBA Med. Benefits Plan v. Lago*, 867 So.2d 1184 (Fla.Dist.Ct.App. 2004); *Middleton v. Russell Group, Ltd.*, 126 N.C.App. 1, 483 S.E.2d 727 (1997); *Murphy v. Cmty. Health Network of La., Inc.*, 712 So.2d 296 (La.Ct.App.1998); *Garcia v. Kaiser Found. Hospitals*, 90 Hawai'i 425, 978 P.2d 863 (1999); *Puget Sound Elec. Workers Health and Welfare Trust Fund v. Merit Co.*, 123 Wash.2d 565, 870 P.2d 960 (1994).

While Tennessee Rule of Appellate Procedure 13(b) permits this Court to address subject matter jurisdiction issues, even when not raised by the parties, it is significant to note that neither party has chosen to assert the issue which is an extremely complex one demanding intense judicial scrutiny. Under these circumstances and in the interest of judicial economy, we choose not to further delve into the jurisdictional question or the extensive parallel proceedings in the multi-district managed care litigation.

Those motivated by academic curiosity are referred to *In re Managed Care Litig.*, 143 F.Supp.2d 1371 (S.D.Fla.2001); *In re Managed Care Litig.*, 150 F.Supp.2d 1330 (S.D.Fla.2001); *In re Managed Care Litig.*, 185 F.Supp.2d 1310 (S.D.Fla.2002); *In re Managed Care Litig.*, Nos. MDL 1334, 00–1334MDMORENO, 2002 WL 1359736 (S.D.Fla. Mar. 25, 2002); *In re Managed Care Litig.*, Nos. MDL 1334, 00–1334MDMORENO, 2002 WL 1359734 (S.D.Fla. Jun. 11, 2002); *In re Managed Care Litig.*, 236 F.Supp.2d 1336 (S.D.Fla. 2002); *In re: Managed Care Litig.*, No. 00–1334–MD–Moreno, 2003 WL 22218324 (S.D.Fla. May 30, 2003); *In re Managed Care Litig.*, No. 00–MD–1334, 2003 WL 22410373 (S.D.Fla. Sept. 15, 2003); *In re: Managed Care Litig.*, No. 00–1334–MD–Moreno, 2003 WL 22850070 (S.D.Fla. Oct. 24, 2003); *In re Managed Care Litig.*, 415 F.Supp.2d 1378 (S.D.Fla.2006); *In re Managed Care Litig.*, 430 F.Supp.2d 1336 (S.D.Fla.2006).

By the express provisions of the Complaint, this case is limited to an action by TMA against Defendants under the provisions of the Tennessee Consumer Protection Act. The allegations of the Complaint are practically a carbon copy of complaints filed in the multi-district litigation cases and the Complaint filed in *Rosenberg v. BlueCross BlueShield of Tennessee*, M2005–01070–COA–R9–CV, 219 S.W.3d 892, decided by this Court on November 29, 2006.

Defendants filed a Motion to Compel Arbitration or Dismiss the Case. On April 25, 2005, the trial court ruled:

The court grants the motion of the defendants to dismiss the complaint of the plaintiff, Tennessee Medical Association ("TMA"), for the following reasons:

1. TMA's breach of contract claim is dismissed because on the face of the pleadings TMA has no contractual relationship with the defendants.

2 To the extent TMA asserts a breach of contract claim derivative of its physician members' contracts with the defendants, the Court dismisses that claim. The pleadings establish that TMA has no contractual relationship with the defendants, and there are no allegations in the pleadings to state a claim that TMA is an intended third-party beneficiary of the agree-

ments between its physician members and the defendants. Accordingly, absent contractual or third-party beneficiary status, TMA cannot legally assert a derivative breach of contract claim. Additionally, even if TMA did have a derivative contract claim, the Court has determined that TMA's member physicians are required to arbitrate such claims. As a derivative, TMA's claim of breach of contract would also have to be arbitrated.

3. The Court dismisses TMA's claim that the defendants have violated Tennessee Code Annotated section 56–7–109, the Tennessee Prompt Pay Act. On the face of the pleadings, TMA is neither a provider nor a submitter of claims, the status required by the Act. If the TMA claim is derivative of a Prompt Pay Act Claim by its members, like the derivative breach of contract claim, it is subject to arbitration.

4. The Court dismisses TMA's claim of a violation of the Tennessee Consumer Protection Act. A nonprofit corporation, such as TMA, is entitled to the protections of the Tennessee Consumer Protection Act if the corporation can show that it has been injured by a violation of the statute. *ATS Southeast v. Carrier Corp.*, 18 S.W.3d 616 [626] (Tenn.2000). But the corporation must, nevertheless, fulfill the other requirements of the statute and allege violations in connection with some "trade, commerce, or consumer transaction." TENN.CODE ANN. §§ 47–18–103(11), –104(a), –109(a)(1). TMA's pleadings fail to identify any consumer transaction or other exchange between itself and the defendants which fits within the terms of the Tennessee Consumer Protection Act. The pleadings establish that physicians and other providers contract with the defendants to provide medical services to the defendants' insureds. The TMA's members, who are physicians, sell their services to the defendants for the benefit of the defendants' members who consume those professional services. But TMA is not a party to this arrangement, and it does not perform services nor consume services. It is neither a buyer nor a seller in any transaction with the defendants, nor even a prospective buyer or seller. TMA's connection to the trade and commerce between the defendants, physicians, and insureds is too remote to qualify for the protections of the Act.

In that it appears that TMA has abandoned claims derivative of its members' claims and has responded to the motion to dismiss with an assertion of direct claims, the Court dismisses TMA's complaint with prejudice. Had TMA's claims been derivative the Court would have stayed TMA's litigation while the arbitration of its members' claims proceed. Court costs and any fax filings fees assessed against the plaintiff, for which execution may issue if necessary.

TMA asserts the issues on appeal to be:

I. Whether the Trial Court incorrectly held that TMA failed to state a claim for injunctive relief pursuant to Tenn. Code. Ann. § 47–18–109(b) for BCBST's violations of the Tennessee Consumer Protection Act?

   A. Whether the Trial Court failed to apply the standard in Tenn.Code Ann. § 47–18–109(b) of whether BCBST's violations of the Tennessee Consumer Protection Act "affected" TMA, and instead applied the standard of Tenn.Code. Ann. § 47–18–109(b), *i.e.*, whether TMA suffered an ascertainable loss "as a result of" the unfair or deceptive acts or practices of BCBST?

B. Whether the record establishes that TMA was "affected" by the unfair and deceptive conduct of BCBST in bundling, downcoding, and otherwise underpaying TMA members' claims for medical services?

II. Whether TMA's private enforcement action pursuant to Tenn.Code. Ann. § 47–18–109(b) is subject to arbitration?

A. Whether TMA can be forced to arbitrate its direct claim as an "affected" party when there is no arbitration agreement between the parties?

B. Whether the arbitration provisions TMA seeks to enforce are unenforceable as an "illusory" cost-prohibitive remedy?

We affirm the action of the trial court.

Appellant, by abandoning all derivative rights, apparently recognizes the persuasive and perhaps controlling authority of *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (U.S.1992) and *Steamfitters Local Union No. 614 Health and Welfare Fund, et al. v. Philip Morris, Inc., et al.*, No. W1999–01061–COA–R9–CV, 2000 WL 1390171 (Tenn.Ct.App. Sept. 26, 2000). The derivative injuries alleged in the complaint are exactly the same as those alleged by Drs. Rosenberg and Darby in their individual complaints and the same as were alleged by individual doctors in the multi-district litigation.

In the analogous context of a union suing in its representative capacity, an employer under the Sherman Antitrust Act, the Supreme Court observed:

An additional factor is the directness or indirectness of the asserted injury. In this case, the chain of causation between the Union's injury and the alleged restraint in the market for construction subcontracts contains several somewhat vaguely defined links. According to the complaint, defendants applied coercion against certain landowners and other contracting parties in order to cause them to divert business from certain union contractors to nonunion contractors. As a result, the Union's complaint alleges, the Union suffered unspecified injuries in its "business activities." It is obvious that any such injuries were only an indirect result of whatever harm may have been suffered by "certain" construction contractors and subcontractors.

If either these firms, or the immediate victims of coercion by defendants, have been injured by an antitrust violation, their injuries would be direct and, as we held in [*Blue Shield of Virginia v.*] *McCready, supra,* [457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) ] they would have a right to maintain their own treble-damages actions against the defendants. An action on their behalf would encounter none of the conceptual difficulties that encumber the Union's claim. The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party such as the Union to perform the office of a private attorney general. Denying the Union a remedy on the basis of its allegations in this case is not likely to leave a significant antitrust violation undetected or unremedied.

*Associated Gen. Contractors v. Carpenters,* 459 U.S. 519, 540–42, 103 S.Ct. 897, 74 L.Ed.2d 723 (U.S.1983)(footnotes omitted).

■ Even if we assume that TMA has standing to derivatively assert claims of its collective membership or to sue in its own

right for alleged injury to TMA, the proper forum at this stage of the proceeding is arbitral, not judicial. Addressing this question as to various medical associations participating in the managed care litigation, the United States District Court of Florida, Southern District, held on September 15, 2003:

> The next important decision concerns the fate of the claims pressed by the various Plaintiff medical associations. These medical associations have brought suit for declaratory and injunctive relief both individually and on behalf of their respective memberships. Analysis of this issue can be neatly divided into alleged direct and derivative claims.

> Associations suing in a representative capacity generally are bound by the same limitations and obligations as the members that they represent. *Hunt v. Wash. St. Apple Advers. Comm'n,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *Communications Workers of Am. v. AT & T Co.,* 40 F.3d 426, 434 n. 2, 435 (D.C.Cir.1994) (dismissing union's claims because its members did not exhaust administrative remedies or submit dispute to mandatory arbitration). In fact, Defendants argue that associations are bound by the greatest commitments of the least of their physicians; otherwise, it would permit those physicians to escape their commitments merely by having a representative sue on their behalf. *Crow Tribe of Indians v. Campbell Farming Corp.,* 828 F.Supp. 1468, 1478 (D.Mont.1992), *aff'd,* 31 F.3d 768 (9th Cir.1994), *cert denied,* 514 U.S. 1018, 115 S.Ct. 1362, 131 L.Ed.2d 218 (1995).

*In re: Managed Care Litig.,* No. 00–MD–1334, 2003 WL 22410373, at *9 (S.D.Fla. Sept. 15, 2003).

For good or ill, the scope of the Federal Arbitration Act reaches the farthest limits of Congress' power under the commerce clause. U.S. Const. art. I, § 8, cl. 3. Nowhere is that scope manifested, particularly as it relates to the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Employee Retirement Income Security Act (ERISA), than in the managed care litigation in which the exhaustive opinion of District Judge Moreno of the Southern District of Florida, *In re Managed Care Litig.,* 132 F.Supp.2d 989 (S.D.Fla.2000) is followed by the affirming opinion of the Eleventh Circuit Court of Appeals, *In re Humana Inc. Managed Care Litig.,* 285 F.3d 971 (11th Cir.2002). Certiorari was granted by the U.S. Supreme Court, and in a unanimous opinion for the eight member court (Thomas, J. not participating), the Court held that the very question of how to construe the arbitration provisions in the face of contractual limitations upon treble and punitive damages was a matter to be addressed in the first instance by the arbitrator.

> In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. As in *Vimar [Seguros y Reaseguros, S.A., v. M/V Sky Reefer,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) ], the proper course is to compel arbitration.

*PacifiCare Health Systems, Inc. v. Book,* 538 U.S. 401, 407, 123 S.Ct. 1531, 155 L.Ed.2d 578 (U.S.2003).

In the case at bar, all of the contracts between the physician-providers on the one hand and BCBST on the other, contain compulsory arbitration provisions. TMA has no contractual relation of any kind

with BCBST. The trial court held that TMA could not escape the mandatory arbitration provisions in each of the provider contracts, and no logical reason exists to say otherwise. The providers in this case cannot escape their commitments to arbitrate by having a representative sue on their behalf. *See In re Managed Care Litigation,* 2003 WL 22410373. The trial court so held in *Penn. Psychiatric Soc'y v. Green Spring Health Serv., Inc.,* No. Civ. A. 99–937, 2000 WL 33365907 (W.D.Pa. Mar. 24, 2000). This holding was not reversed on appeal, but since not all of the provider contracts contained compulsory arbitration provisions, the Court of Appeals for the Third Circuit remanded the arbitration provisions with instructions to the trial court to reexamine the contracts. 280 F.3d 278, 293 (3rd Cir.2002). Certiorari was denied by the U.S. Supreme Court in October of 2002, 537 U.S. 881, 123 S.Ct. 102, 154 L.Ed.2d 138 (U.S.2002), and a year later the parties entered into voluntary settlement without further adjudication.

Where a contract provides for compulsory arbitration, actions under the Tennessee Consumer Protection Act belong in an arbitral forum under both the Tennessee Arbitration Act and the Federal Arbitration Act. *Pyburn v. Bill Heard Chevrolet,* 63 S.W.3d 351, 357 (Tenn.Ct.App.2001).

When the heart of the controversy is laid bare, TMA is attempting to adjudicate issues which are entirely dependent on contractual relationships between its member-providers and BCBST. TMA alleges no relationship with BCBST, and TMA fails to assert any allegations not based upon the contractual relationships between the providers and BCBST. Under such circumstances, TMA is bound by the arbitration provisions of the providers' contracts. *See Benton v. Vanderbilt Univ.,* 137 S.W.3d 614, 620 (Tenn.2004). So even

if one concedes standing to TMA, the proper forum to address the issues it asserts is an arbitral forum, and the trial court was correct in so holding.

Resolving the compulsory arbitration issue does not destroy Plaintiff's case. It merely transfers the case from a judicial forum to an arbitral forum. While this would be a travesty at common law, nothing could be more clearly settled under the Federal Arbitration Act and all cases federal and state construing that Act, that an arbitral forum is the preferred forum when parties have agreed by contract to compulsory arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (U.S. 1983); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (U.S. 1984); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (U.S.1991); *Allied–Bruce Terminix Co., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (U.S.1995); *Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (U.S.2000); *Pyburn,* 63 S.W.3d 351.

Overriding the arbitral versus judicial forum question is the determination by the trial court to dismiss the case on the basis that no "trade, commerce or consumer transaction" was alleged in the pleadings. Tenn.Code Ann §§ 47–18–103(11), –104(a), –109(a)(1).

The Tennessee Consumer Protection Act is to be construed to effect its purposes which are generally to protect persons or entities "affected" by a violation of the Act, and such violation requires some "trade or commerce." *Sears Roebuck and Co. v. Emerson Elec. Co.,* No. 02 C 5771, 2003 WL 60573, at *11 (N.D.Ill. Jan. 7, 2003); *Operations Mgmt. Int'l, Inc. v. Tengasco, Inc.,* 35 F.Supp.2d 1052, 1058 (E.D.Tenn.1999); *Ganzevoort v. Russell,*

949 S.W.2d 293, 297–98 (Tenn.1997); *Pursell v. First Am. Nat'l Bank,* 937 S.W.2d 838, 841 (Tenn.1996).

Reiterating principles laid down in *Holmes,* 503 U.S. 258, 112 S.Ct. 1311, and in *Steamfitters Local Union No. 614 Health and Welfare Fund,* 2000 WL 1390171, the Sixth Circuit Court of Appeals set forth controlling principles:

> In order to have standing to bring suit under RICO, a plaintiff must demonstrate proximate cause between the alleged injury and the defendant's injurious conduct. *See Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Pik–Coal Co. v. Big Rivers Elec. Corp.,* 200 F.3d 884, 889 (6th Cir.2000). The Supreme Court has explained that common law principles of proximate causation are incorporated into the RICO statute. *Holmes,* 503 U.S. at 267–68, 112 S.Ct. 1311; *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 532–33, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (general common law principles of proximate cause are incorporated into federal antitrust provisions). A central element of proximate cause is the requirement of a direct injury. *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311; *Associate Gen. Contractors,* 459 U.S. at 532–33 & n. 25, 103 S.Ct. 897. At common law, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes,* 503 U.S. at 268–69, 112 S.Ct. 1311; *see also Pik–Coal Co.,* 200 F.3d at 889.

The district court dismissed Plaintiffs' claims because they failed to satisfy this proximate cause requirement. According to the district court, because Plain-

tiffs' injuries "are purely contingent on harm to the third-party smokers, these injuries are clearly indirect." *Perry v. Amer. Tobacco Co., Inc.,* No. 00–CV–97, 2001 WL 686812, *3 (E.D.Tenn. April 12, 2001). In other words, the alleged injuries were too remote to afford standing under any of the asserted causes of action. We agree.

· · ·

The same proximate cause standard governs Plaintiffs' statutory claims under the TCPA and the TTPA. The Tennessee Court of Appeals, in *Tennessee Steamfitters,* addressed cost-recovery claims against tobacco companies and concluded that the plaintiffs' injuries were too remote and the claims failed for lack of proximate cause. 2000 WL 1390171, at *7. The court affirmed the trial court's dismissal of the plaintiffs' antitrust claims under the TTPA. The trial court had denied the motion to dismiss with respect to the TCPA claims, however, and the Tennessee Court of Appeals reversed. According to the court, "in order to assert a claim under the TCPA in this case, the [plaintiffs] must show that the Tobacco Companies' wrongful conduct proximately caused their injury." *Id.* The court held that they had failed to do so, and that the plaintiffs' claims were "too remote, as a matter of law." *Id.*

*Perry v. Am. Tobacco Co., Inc.,* 324 F.3d 845, 848, 851 (6th Cir.2003).

### CONCLUSION

On June 19, 2006, three months after argument of the case at bar, the District Court for the Southern District of Florida ended trial court proceedings in *In re Managed Care Litig.,* 430 F.Supp.2d 1336 (S.D.Fla.2006).

Motions for summary judgment filed by the last two defendants, United Health-

care, Inc. and Coventry Healthcare, Inc. were granted by the trial court. The parties to many of the cases in the multi-district litigation had settled their claims, and summary judgment had previously been granted in favor of PacifiCare Health Systems, Inc. After all the massive volumes of the multi-district litigation, the Court observed, "Those desiring changes in the way health care is provided in America must either look for remedies before Congress or allow the free market to dictate the results." 430 F.Supp.2d at 1340.

To the extent that this case seeks to use the Tennessee Consumer Protection Act to accomplish what could not be accomplished in the multi-district litigation, it suffers the same fate.

Judgment of the trial court is in all respects affirmed, and costs are assessed to Appellant.