## PACIFICARE HEALTH SYSTEMS, INC., ET AL. *v.* BOOK ET AL.

No. 02–215.   Argued February 24, 2003—Decided April 7, 2003

SCALIA, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the case.

*William E. Grauer* argued the cause for petitioners. With him on the briefs were *Christopher R. J. Pace, James W. Quinn, Jeffrey S. Klein, Edward Soto,* and *Gregory S. Coleman.*

*Joe R. Whatley, Jr.,* argued the cause for respondents. With him on the brief were *Charlene P. Ford* and *James B. Tilghman, Jr.**

JUSTICE SCALIA delivered the opinion of the Court.

In this case, we are asked to decide whether respondents can be compelled to arbitrate claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. § 1961 *et seq.,* notwithstanding the fact that the parties' arbitration agreements may be construed to limit the arbitrator's authority to award damages under that statute.

## I

Respondents are members of a group of physicians who filed suit against managed-health-care organizations including petitioners PacifiCare Health Systems, Inc., and PacifiCare Operations, Inc. (collectively, PacifiCare), and United-Healthcare, Inc., and UnitedHealth Group Inc. (collectively, United). These physicians alleged that the defendants unlawfully failed to reimburse them for health-care services that they had provided to patients covered by defendants' health plans. They brought causes of action under RICO, the Employee Retirement Income Security Act of 1974 (ERISA), and federal and state prompt-pay statutes, as well as claims for breach of contract, unjust enrichment, and *in*

---

*Briefs of *amici curiae* urging reversal were filed for the Chamber of Commerce of the United States by *Evan M. Tager, Miriam R. Nemetz,* and *Robin S. Conrad;* for the National Association of Manufacturers et al. by *Miguel A. Estrada, Andrew S. Tulumello, Jan S. Amundson, Quentin Riegel,* and *Stephanie Kanwit;* and for the Washington Legal Foundation by *Christopher Landau, Ashley C. Parrish, Daniel J. Popeo,* and *Richard A. Samp.*

Briefs of *amici curiae* urging affirmance were filed for the National Association of Consumer Advocates by *Craig Jordan;* for Public Citizen, Inc., by *Scott L. Nelson* and *Brian Wolfman;* and for Trial Lawyers for Public Justice by *F. Paul Bland, Jr.*

*quantum meruit. In re: Managed Care Litigation,* 132 F. Supp. 2d 989, 992 (SD Fla. 2000).

Of particular concern here, PacifiCare and United moved the District Court to compel arbitration, arguing that provisions in their contracts with respondents required arbitration of these disputes, including those arising under RICO. *Ibid.* Respondents opposed the motion on the ground that, because the arbitration provisions prohibit an award of punitive damages, see App. 107, 147, 168, 212, respondents could not obtain "meaningful relief" in arbitration for their claims under the RICO statute, which authorizes treble damages, 18 U. S. C. § 1964(c). See *Paladino* v. *Avnet Computer Technologies, Inc.,* 134 F. 3d 1054, 1062 (CA11 1998) (holding that where a remedial limitation in an arbitration agreement prevents a plaintiff from obtaining "meaningful relief" for a statutory claim, the agreement to arbitrate is unenforceable with respect to that claim).

The District Court denied petitioners' request to compel arbitration of the RICO claims. 132 F. Supp. 2d, at 1007. The court concluded that given the remedial limitations in the relevant contracts, it was, indeed, "faced with a potential *Paladino* situation . . . , where the plaintiff may not be able to obtain meaningful relief for allegations of statutory violations in an arbitration forum." *Id.,* at 1005. Accordingly, it found the arbitration agreements unenforceable with respect to respondents' RICO claims. *Id.,* at 1007. The Eleventh Circuit affirmed "for the reasons set forth in [the District Court's] comprehensive opinion," *In re: Humana Inc. Managed Care Litigation,* 285 F. 3d 971, 973 (2002), and we granted certiorari, 537 U. S. 946 (2002).

II

Petitioners argue that whether the remedial limitations render their arbitration agreements unenforceable is not a question of "arbitrability," and hence should have been decided by an arbitrator, rather than a court, in the first in-

stance. They also claim that even if this question is one of arbitrability, and is therefore properly within the purview of the courts at this time, the remedial limitations at issue do not require invalidation of their arbitration agreements. Either way, petitioners contend, the lower courts should have compelled arbitration. We conclude that it would be premature for us to address these questions at this time.

Our decision in *Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky Reefer*, 515 U. S. 528 (1995), supplies the analytic framework for assessing the ripeness of this dispute. In *Vimar*, we dealt with a bill of lading concerning a shipment of goods from Morocco to Massachusetts. Upon receipt of the goods, the purchaser discovered that they had been damaged, and, along with its insurer (Vimar), filed suit against the shipper. The shipper sought to compel arbitration, relying on choice-of-law and arbitration clauses in the bill of lading under which disputes arising out of the parties' agreement were to be governed by Japanese law and resolved through arbitration before the Tokyo Maritime Arbitration Commission. Vimar countered by arguing that the arbitration clause violated the Carriage of Goods by Sea Act (COGSA), 46 U. S. C. App. § 1300 *et seq.*, and hence was unenforceable. 515 U. S., at 531–532. In particular, Vimar claimed that "there is no guarantee foreign arbitrators will apply COGSA"; that the foreign arbitrator was likely to apply rules of Japanese law under which respondents' liability might be less than what it would be under COGSA; and that this would violate "[t]he central guarantee of [COGSA] § 3(8) . . . that the terms of a bill of lading may not relieve the carrier of obligations or diminish the legal duties specified by the Act." *Id.*, at 539.

Notwithstanding Vimar's insistence that the arbitration agreement violated federal policy as embodied in COGSA, we declined to reach the issue and held that the arbitration clause was, at least initially, enforceable. "At this interlocutory stage," we explained, "it is not established what law the arbitrators will apply to petitioner's claims or that petitioner

will receive diminished protection as a result. The arbitrators may conclude that COGSA applies of its own force or that Japanese law does not apply so that, under another clause of the bill of lading, COGSA controls." *Id.*, at 540. We further emphasized that "mere speculation that the foreign arbitrators *might* apply Japanese law which, depending on the proper construction of COGSA, *might* reduce respondents' legal obligations, does not in and of itself lessen liability under COGSA § 3(8)," nor did it provide an adequate basis upon which to declare the relevant arbitration agreement unenforceable. *Id.*, at 541 (emphases added). We found that "[w]hatever the merits of petitioner's comparative reading of COGSA and its Japanese counterpart, its claim is premature." *Id.*, at 540.

The case at bar arrives in a similar posture. Two of the four arbitration agreements at issue provide that "punitive damages shall not be awarded [in arbitration]," App. 107, 147; one provides that "[t]he arbitrators . . . shall have no authority to award any punitive or exemplary damages," *id.*, at 212; and one provides that "[t]he arbitrators . . . shall have no authority to award extra contractual damages of any kind, including punitive or exemplary damages . . . ," *id.*, at 168. Respondents insist, and the District Court agreed, 132 F. Supp. 2d, at 1000–1001, 1005, that these provisions preclude an arbitrator from awarding treble damages under RICO. We think that neither our precedents nor the ambiguous terms of the contracts make this clear.

Our cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards. Thus, in *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 784 (2000), we characterized the treble-damages provision of the False Claims Act, 31 U. S. C. §§ 3729–3733, as "essentially punitive in nature." In *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U. S. 477, 485 (1977), on the other hand, we explained that the treble-

damages provision of § 4 of the Clayton Act, 15 U. S. C. § 15, "is in essence a remedial provision." Likewise in *American Soc. of Mechanical Engineers, Inc.* v. *Hydrolevel Corp.*, 456 U. S. 556, 575 (1982), we noted that "the antitrust private action [which allows for treble damages] was created primarily as *a remedy* for the victims of antitrust violations." (Emphasis added.) And earlier this Term, in *Cook County* v. *United States ex rel. Chandler, ante,* at 130, we stated that "it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." Indeed, we have repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature. In *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 151 (1987), we stated that "[b]oth RICO and the Clayton Act are designed *to remedy* economic injury by providing for the recovery of treble damages, costs, and attorney's fees." (Emphasis added.) And in *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220, 241 (1987) we took note of the "remedial function" of RICO's treble-damages provision.

In light of our case law's treatment of statutory treble damages, and given the uncertainty surrounding the parties' intent with respect to the contractual term "punitive,"[1] the application of the disputed language to respondents' RICO claims is, to say the least, in doubt. And *Vimar* instructs that we should not, on the basis of "mere speculation" that an arbitrator might interpret these ambiguous agreements

---

[1] Contrary to respondents' contention, the prohibition in Dr. Manual Porth's contract against an arbitrator's awarding "extracontractual" damages is likewise ambiguous. This language might mean, as respondents would have it, that an arbitrator is prohibited from awarding any damages other than for breach of contract. Brief for Respondents 20–21. But it might only mean that an arbitrator cannot award noneconomic damages such as punitive or mental-anguish damages. See 3 D. Dobbs, Law of Remedies: Damages-Equity-Restitution § 12.1(1), p. 8 (2d ed. 1993) ("Punitive damages and mental anguish damages are thus considered 'extracontractual,' and usually denied in pure contract cases").

in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved.[2]   515 U. S., at 541.   In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract.   As in *Vimar*, the proper course is to compel arbitration.   The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

---

[2] If the contractual ambiguity could itself be characterized as raising a "gateway" question of arbitrability, then it would be appropriate for a court to answer it in the first instance.   But we noted just this Term that "the phrase 'question of arbitrability' has a . . . limited scope." *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83 (2002).   Indeed, we have "found the phrase [question of arbitrability] applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.*, at 83–84.   Given our presumption in favor of arbitration, *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24–25 (1983), we think the preliminary question whether the remedial limitations at issue here prohibit an award of RICO treble damages is not a question of arbitrability.