# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2794

OBLIX, INC.,

*Plaintiff-Appellant,*

v.

FELICIA FERGUSON WINIECKI,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 6878—**John W. Darrah**, *Judge.*

———————

ARGUED MAY 25, 2004—DECIDED JUNE 30, 2004

———————

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* When Felicia Winiecki
went to work for Oblix in September 2000 she signed a
contract promising to arbitrate any dispute that might arise
out of the employment relation. She was fired in April 2002
and believes not only that Oblix has not paid everything she
is due but also that the discharge (and other acts) violate
Title VII of the Civil Rights Act of 1964. Oblix sought a
declaratory judgment that she must arbitrate these dis-
putes. Winiecki responded with a counterclaim demanding
redress on the merits; this makes it unnecessary to decide
whether the employer's suit was premature. The district

court denied Oblix's motion to compel arbitration. 2003 U.S. Dist. LEXIS 6976 (N.D. Ill. Apr. 23, 2003), reconsideration denied, 2003 U.S. Dist. LEXIS 11483 (July 1, 2003). The judge concluded that a material dispute calls for more discovery and litigation to determine whether the arbitration clause is unconscionable under California law. (Oblix has its principal place of business in California, and the agreement specifies that its law governs.)

Oblix immediately appealed, which raises jurisdictional issues. Although 9 U.S.C. §16(a)(1) allows an interlocutory appeal from a decision denying a party the benefit of arbitration, it might be doubted whether an order putting off decision on the validity of an arbitration clause qualifies. But *Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002), holds that an order continuing the litigation, and refusing to direct arbitration, during discovery into issues that the district judge believes will affect arbitrability, is immediately appealable. Neither side has asked us to revisit that subject.

Winiecki contends that we lack appellate jurisdiction nonetheless. In her view the appeal was too late rather than too early. The district court entered its order on April 23, 2003, and then invited Oblix to file a motion for reconsideration so that the judge could address the significance of *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), which had been released on April 7 but had not been addressed in the court's opinion. Such a motion was filed on May 19 and denied on July 1. Oblix appealed on July 3—too late, Winiecki insists, because it had only 30 days from the dispositive order of April 23. See Fed. R. App. P. 4(a)(1)(A). Although Rule 4(a)(4)(A) provides that the time runs anew from an order denying one of the listed motions, a "motion to reconsider" is not on the rule's list. The closest would have been a motion to alter or amend the judgment under Fed. R. Civ. P. 59, see Rule 4(a)(4)(A)(iv), but the motion filed on May 19 is not one of those—first because there is no

"judgment" to alter or amend, see *Kapco Mfg. Co. v. C&O Enterprises, Inc.*, 773 F.2d 151 (7th Cir. 1985), and second because a Rule 59 motion must be filed within 10 days (calculated according to Fed. R. Civ. P. 6), and that period expired on May 7. We grant all of this, but the fact remains that on July 1 the district court entered an order reiterating its refusal to send the matter to arbitration. Winiecki supposes that when an interlocutory appeal is allowed, the appeal must come from the first appealable decision. Not so; *Behrens v. Pelletier*, 516 U.S. 299 (1996), holds that each order meeting the conditions for interlocutory appeal may be appealed separately. The order of July 1 is no less appealable under §16(a) than the order of April 23, so the notice filed on July 3 is timely.

Winiecki defends the decision in her favor with the argument that the arbitration agreement does not cover disputes about compensation or discrimination. See *Massachusetts Mutual Insurance Co. v. Ludwig*, 426 U.S. 479 (1976) (a party may defend its judgment using any properly preserved argument, without taking a cross appeal). This line of argument is unavailing. One section of the contract provides: "any dispute or controversy arising out of or relating to Section 1 of this Agreement or the amount of salary compensation, severance or other similar amount owing to me, shall be resolved through the arbitration procedure set forth". Another reads: "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration . . . in accordance with the rules then in effect of the American Arbitration Association." The first clause directly addresses disputes about compensation, and the second, which deals with controversies "arising out of or relating to" the employment agreement picks up Winiecki's contention that her discharge was discriminatory. This is a broad arbitration agreement—not broad enough to compel the conclusion that arbitrability is itself an arbitrable issue, cf. *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), but sufficient to comprise disputes about compensation and employment discrimination.

The district court thought that the arbitration clause, as part of a form contract, might be called "unconscionable" because "adhesive"—this clause, and all the rest of the agreement, was offered on a take-it-or-leave-it basis, and Oblix did not promise to arbitrate all of its disputes with Winiecki (if she had been accused of departing with trade secrets, then Oblix could have selected a judicial forum). That Oblix did not promise to arbitrate all of its potential claims is neither here nor there. Winiecki does not deny that the arbitration clause is supported by consideration—her salary. Oblix paid her to do a number of things; one of the things it paid her to do was agree to non-judicial dispute resolution. It is hard to see how the arbitration clause is any more suspect, or any less enforceable, than the others—or, for that matter, than her salary. A person who accepts a "non-negotiable" offer of $50,000 salary would be laughed out of court if she filed suit for an extra $10,000, contending that the employer's refusal to negotiate made the deal "unconscionable" and entitled her to better terms. Well, arbitration was as much a part of this deal as Winiecki's salary and commissions, the rules about handling trade secrets, and other terms. All stand or fall together.

We could stop here, invoke *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), and send the parties off to arbitration. *Prima Paint* holds that one who challenges the entire contract containing an arbitration clause nonetheless must arbitrate, and Winiecki's dislike of standard-form contracts is just a means of challenging the whole bargain, root and branch. See also *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639 (7th Cir. 1993). But there is little point in telling them to arbitrate the doomed "unconscionability" argument,

which has been rejected in this circuit as often as it has been raised. Businesses regularly agree to arbitrate their disputes with each other; giving employees the same terms and forum (the AAA) that a firm deems satisfactory for commercial dispute resolution is not suspect. Employees fare well in arbitration with their employers— better by some standards than employees who litigate, as the lower total expenses of arbitration make it feasible to pursue smaller grievances and leave more available for compensatory awards. See Theodore Eisenberg & Elizabeth Hill, *Employment Arbitration and Litigation: An Empirical Comparison*, 58 Dispute Resolution J. 44 (2003-04). Perhaps this is why unions find arbitration so attractive and insist that employers agree to this procedure. How could one call it unconscionable when an employer treats unrepresented workers such as Winiecki the same as it treats its organized labor force?

Standard-form agreements are a fact of life, and given §2 of the Federal Arbitration Act, 9 U.S.C. §2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals. See, e.g., *Carbajal v. H&R Block Tax Services, Inc.*, No. 03-3722 (7th Cir. June 24, 2004); *Metro East Center for Conditioning and Health v. Qwest Communications International, Inc.*, 294 F.3d 924 (7th Cir. 2002); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997). Agreements to arbitrate employment-related subjects, including claims of employment discrimination, are treated the same for this purpose as agreements to arbitrate labor- relations matters, building leases, disputes about patent royalties, and controversies among participants in reinsurance treaties. See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

California routinely enforces limited warranties and other terms found in form contracts. See, e.g., *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042 (2001) (indemnification); *Olsen v. Breeze, Inc.*, 40 Cal. App. 4th 608 (1996) (release); *Allan v. Snow Summit, Inc.*, 51 Cal. App. 4th 1358 (1996) (promise to accept risk of sport injury and hold ski resort harmless). See generally *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 924-25, 702 P.2d 503 (1985). If a state treats arbitration differently, and imposes on form arbitration clauses more or different requirements from those imposed on other clauses, then its approach is preempted by §2 of the Federal Arbitration Act. See *Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271-72 (1995). Winiecki reads *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 6 P.3d 669 (2000), to create such special requirements, and it was *Armendariz* on which the district judge principally relied in concluding that more discovery is required. At least one court of appeals reads *Armendariz* not to establish any special hurdles for arbitration agreements and would enforce without ado an agreement like the one between Oblix and Winiecki. See *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc). It is in the end irrelevant whether the Supreme Court of California wants to treat arbitration less favorably than other promises in form contracts; no state can apply to arbitration (when governed by the Federal Arbitration Act) any novel rule. Under normal rules of contract, the promises Winiecki made in order to be hired and paid are enforceable. Thus she must arbitrate. The arbitral forum can entertain any other argument she may have. See *PacifiCare Health System, supra*; see also *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).

The decision of the district court is reversed, and the case is remanded with instructions to refer the parties to arbitration and dismiss Winiecki's counterclaim.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*