**UNITED STATES of America ex rel. Roger L. SANDERS, et al., Relators,**

v.

**ALLISON ENGINE COMPANY, INC., et al., Defendants.**

**Case Nos. 1:95–cv–970, 1:99–cv–923.**

United States District Court, S.D. Ohio, Western Division, at Dayton.

Oct. 27, 2009.

---

James Burdette Helmer, Jr., Paul B. Martins, Robert M. Rice, Helmer Martins, Rice & Popham Co., L.P.A., Gerald F. Kaminiski, Ass't U.S. Attorney, Cincinnati, OH, Donald Patrick McKenna, Jr., Scott A. Powell, Hare, Wynn, Newell & Newton LLP, Birmingham, AL, Joyce R. Branda, Michael F. Hertz, Paul J. Wogaman, U.S. Department of Justice, Civil Divison, Washington, DC, for Relators.

Glenn Virgil Whitaker, Victor A. Walton, Jr. Vorys Sater Seymour & Pease, Lawrence Robert Elleman, Thomas Jason Murphy, Dinsmore & Shohl, Cincinnati, OH, James A. Bensfield, Kara N. Schmidt, Peter B. Hutt, III, Miller & Chevalier, Chartered, Washington, DC, for Defendants.

## ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO PRECLUDE RETROACTIVE APPLICATION OF 31 U.S.C. § 3729(a)(1)(B) OR TO DECLARE UNCONSTITUTIONAL FRAUD ENFORCEMENT AND RECOVERY ACT OF 2009, PUB. L. NO. 111–21, § 4(f) (Doc. # 716) AND LIFTING THE STAY OF BRIEFING ON THE ISSUE OF WHETHER THE RECORD ON THE QUALITY CASE SHOULD BE REOPENED AND WHAT SHOULD BE DONE IF THE RECORD IS NOT REOPENED

THOMAS M. ROSE, District Judge.

This is a *qui tam* action brought pursuant to the False Claims Act ("FCA") by Relators Roger L. Sanders and Roger L. Thacker against Defendants General Motors Corp. ("GM"), Allison Engine Co., Inc., Southern Ohio Fabricators and General Tool Co. The case against GM has been stayed due to GM's bankruptcy.

This case is the consolidation of two FCA suits alleging fraud in the negotiation and execution of subcontracts relating to the construction of United States Navy Arleigh Burke-class Guided Missile Destroyers. The first action, referred to by the parties as the "Quality Case," alleges that the Defendants submitted claims for payment despite knowing that the Generator Sets that they made for the Destroyers did not conform to contract specifications or Navy regulations. The second action, referred to by the parties as the "Pricing Case," alleges that the subcontractors withheld cost or pricing data during negotiations with the government's agent in violation of the Truth In Negotiations Act ("TINA") and the FCA.

This Court granted summary judgment to the Defendants on the Pricing Case. The Relators presented their Quality Case

to a jury in January, February and March of 2005. At the close of Relator's case, this Court granted Defendants' Motion for Judgment As a Matter of Law on the grounds that the lack of evidence of any false claim presented to the government meant that no reasonable jury could find a violation of the FCA.

The Relators then appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed this Court's grant of summary judgment on the Pricing Claim and reversed this Court's decision on the Quality Claim. *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 471 F.3d 610 (6th Cir.2006).

The Defendants then appealed the Sixth Circuit's decision on the Quality Case to the United States Supreme Court. The grant of summary judgment on the Pricing Case has not been appealed.

The Supreme Court vacated the Sixth Circuit's decision and remanded the case "for further proceedings consistent with this opinion." *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 639, 128 S.Ct. 2123, 2131, 170 L.Ed.2d 1030 (2008). In doing so, the Supreme Court held:

> Contrary to the decision of the Court of Appeals below, we hold that it is insufficient for a plaintiff asserting a [31 U.S.C] § 3729(a)(2) claim to show merely that "[t]he false statement's use ... result[ed] in obtaining or getting payment or approval of the claim," or that "government money was used to pay the false or fraudulent claim." Instead, a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim. Similarly, a plaintiff asserting a claim under § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end.

*Id.* at 2126(quoting *United States ex rel. Sanders*, 471 F.3d at 621).

The Supreme Court opinion was issued on June 9, 2008. On March 9, 2009, the Sixth Circuit remanded the case to this Court. (Doc. # 709.) On April 24, 2009, this Court conducted a status conference. As a result of the status conference, a trial date of May 3, 2010, was set and a briefing scheduled on whether the record on the Quality Case should be reopened and what should be done if the record is not reopened. The Defendants filed their Memorandum on May 26, 2009. (Doc. # 710.) Further briefing on the issue was then stayed (doc. # 713) due to the passage and signing into law of the Fraud Enforcement and Recovery Act of 2009 ("FERA").

FERA was signed into law on May 20, 2009. Among other things, FERA includes amendments to the FCA. Prior to these amendments, any person was liable under 31 U.S.C. § 3729(a)(2) who "knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." This subsection of the FCA was amended by the FERA to provide that any person who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable. 31 U.S.C. § 3729(a)(1)(B). Thus, the FERA amendments to the FCA eliminate the "to get" language and eliminate the words "paid or approved by the Government."

Although enacted on May 20, 2009, the FERA includes a retroactivity clause which provides that the amendments to the FCA identified above "shall take effect on the date of enactment and shall apply to conduct on or after the date of enactment, except that" the amendments identified above "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. § 3729 et

seq.) that are pending on or after that date" (the "retroactivity clause").

On July 21, 2009, the Defendants, sans GM, filed their Motion To Preclude Retroactive Application of 31 U.S.C. § 3729(a)(1)(B) or Alternatively To Declare FERA Unconstitutional. (Doc. # 716.) The Government has filed a Statement of Interest (doc. # 718) and the Relators have responded in opposition (doc. # 719). The Defendants have Replied. (Doc. # 726.) Thus, the Defendants' Motion To Preclude Retroactive Application of 31 U.S.C. § 3729(a)(1)(B) or, Alternatively To Declare FERA Unconstitutional is fully briefed and ripe for decision.

The Defendants now argue that a reading of the plain language indicates that the amendments identified above do not apply to this case and that application of the retroactivity clause to them would violate the Ex Post Facto Clause and the Due Process Clause of the U.S. Constitution. Both the Government and the Relators argue otherwise.

Defendants' arguments regarding a reading of the plain language of the amendments and regarding violation of the Ex Post Facto Clause have merit and will be further addressed. Defendants' Due Process Clause argument need not be and is not addressed herein.

### The Plain Language

■ The Defendants argue that the plain language of the retroactivity clause does not make the amendments to the FCA retroactive to their case. However, Congress may enact laws with retrospective effect so long as the laws are within constitutional limits. *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).

■ A statute may not be applied retroactively absent a clear indication from Congress that it intended such a result. *Id.* When reading the plain language, statutory definitions normally control the meaning of statutory words. *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Ed. 611 (1949). Finally, statutory language has meaning only in context. *Graham County Soil & Water Conservation District v. United States*, 545 U.S. 409, 415, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005).

The standard for finding such a clear indication is a demanding one. *Id.* The retroactivity language must be so clear that it can sustain only one interpretation. *Id.*

The analysis turns then to the FCA retroactivity clause placed in FERA by Congress. The retroactivity language that is relevant here is found in section 4(f)(1) of FERA which provides that:

> The Amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that—(1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after than date ...

Pub. L. No. 111–21, section 4(f).

Subparagraph (B) of section 3729(a)(1) of title 31 is one of the FCA provisions which was changed by FERA and now provides that any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable under the FCA. Thus, Subparagraph (B) of section 3729(a)(1) of title 31 purportedly takes ef-

fect on all FCA claims pending on or after June 7, 2008.

■ The Supreme Court issued its order in this case on June 9, 2008. Thus, this case was pending on June 7, 2008, the retroactivity date provided in FERA. However, the retroactivity date in FERA applies to "claims" pending on June 7, 2008. So the issue becomes whether Congress intended the retroactivity language to apply to "cases" pending on June 7, 2009, or to "claims" pending on June 7, 2009.

The Relators argue that the retroactivity language applies to "cases" pending and the Defendants argue that the retroactivity language only applies, if it is constitutionally firm, to "claims" pending on June 7, 2009. While the Defendants arguably had a "case" pending on June 7, 2008, the Defendants argue that they had no "claims" pending on June 7, 2008 and there is no evidence otherwise. This "case" claiming violation of the FCA has been pending since 1995, but the "claims" upon which this "case" is based were paid in the late 1980s and early 1990s and were no longer pending on June 7, 2008.

A "claim" is defined in the amendments to the FCA set forth in the FERA as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property...." 31 U.S.C. § 3729(b)(2)(A). Neither the amendments to the FCA set forth in the FERA nor the prior FCA include a definition of "case." Thus, a plain reading of the retroactivity language reveals that the relevant change is applicable to "claims" and not to "cases." The new FCA retroactivity clause is not applicable to the Defendants in this case.

This conclusion is supported by the FERA's legislative history. *United States v. Science Applications International Corp.,* 653 F.Supp.2d 87, 106–07 (D.D.C.

2009). The Senate Report's explanation of FERA's amendments to the FCA uses "claims" to refer to a defendant's request for payment and "cases" when discussing civil actions for FCA violations. *Science Applications,* 653 F.Supp.2d at 106–07; see S.Rep. No. 111–10 (2009).

The text of FERA section 4(f) also supports the conclusion that Congress did not intend "claims" in subsection 4(f)(1) to mean "cases." *See Science Applications,* 653 F.Supp.2d at 106–07. Subsection 4(f)(2) immediately following subsection 4(f)(1) reads, "section 3731(b) of title 31, as amended ... shall apply to cases pending on the date of enactment." Pub.L. No. 111–21, section 4(f)(2). "Surely, had Congress intended the retroactivity of subsection 4(f)(1) to be measured by 'cases,' it would have said so as it did in subsection 4(f)(2)." *Id.*

Therefore, the clear indication from Congress is that the revised language at issue here is applicable to "claims" pending on June 7, 2008, and not to "cases" pending on June 7, 2008. Since the Defendants in this case had no "claims" pending on June 7, 2008, the retroactivity clause does not apply to them. Thus, the prior version of the FCA applies.

### The Ex Post Facto Clause

Even if the retroactivity clause enacted as part FERA was to be found by a reading of its plain language to apply to the "claims" pending in this case, application of this retroactivity language to these Defendants would violate the Ex Post Facto Clause of the U.S. Constitution. The Relators specifically argue that Congress disagreed with the Supreme Court's interpretation of the FCA provisions initially at issue in this case and amended the FCA to make its intent clear.

Congress is, of course, free to enact new legislation that changes the way its previous legislation has been interpreted by the

Supreme Court. *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 816–17, 172 L.Ed.2d 565 (2009). However, there are some limitations on what Congress may do, particularly retroactively.

For example, the Ex Post Facto Clause of the U.S. Constitution forbids the making of ex post facto laws. U.S. CONST. Art. I, § 9, cl. 3. Using the Ex Post Facto Clause, the framers of the U.S. Constitution "sought to assure that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

■ "An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed." *Fletcher v. Peck*, 10 U.S. 87, 139, 6 Cranch 87, 3 L.Ed. 162 (1810). Said another way, ex post facto laws are laws which impose punishment for past acts. *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

■ An ex post facto law may inflict penalties on a person or it may inflict pecuniary penalties. *Id.* Traditionally, criminal statutes have been examined for violation of the Ex Post Facto Clause. However, civil statutes may also violate the Ex Post Facto Clause. *Landgraf v. USI Film Products*, 511 U.S. 244, 281, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 971–72 (2d Cir.1985)(the punitive nature of the treble damages provision in the Trademark Counterfeiting Act of 1984 could implicate ex post facto concerns).

■ The threshold question in an ex-post-facto analysis is whether the legislature intended to impose punishment when it enacted the law. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). If the legislature intended to im-

pose punishment, the inquiry ends and the law violates the Ex Post Facto Clause. *Id.* However, if the legislature's intention was to enact a civil and nonpunitive regulatory scheme, a court must further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).

### The Intention of Congress

■ The first question in the ex-post-facto analysis of this case is whether Congress intended to impose punishment when it enacted the FCA. If so, retroactive application of the amendments to the FCA violates the Ex Post Facto Clause because retroactive application of the amendments to the FCA would impose punishment for acts that were not punishable prior to enactment of the amendments.

The FCA is codified under a civil title of the United States Code and not under a criminal title. The amendments to the FCA found in FERA provide for a **civil** penalty of not less than $5,000 and not more than $10,000 ... plus 3 times the amount of damages which the Government sustains because of the act of that person. Pub.L. No. 111–21, section 4(a)(1)(a)(1)(G)(emphasis added).

The Senate Committee on the Judiciary, when reporting on the False Claims Amendment Act of 1986 upon passage out of committee, said, "[t]he purpose of S. 1562, the False Claims Reforms Act, is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S.Rep. No. 345, 1986 U.S.C.C.A.N. 6266. This Senate Committee also said that FCA proceedings are "civil and remedial in nature and are brought to recover compensating damages...." 1986 U.S.C.C.A.N. 5296.

This would seem to indicate that Congress did not intend for FCA sanctions to be punitive. However, individual Senators thought otherwise about the FCA.

According to its sponsor, the FCA was adopted "for the purpose of **punishing** and preventing ... frauds." *United States v. Bornstein*, 423 U.S. 303, n. 5, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976)(citing Cong. Globe, 37th Cong., 3d Sess., 952, remarks of Senator Howard)(emphasis added). Further, statements made by Senators debating the FERA, which includes amendments to the FCA, indicate that they intend for the FCA to be **punitive.**

On April 20, 2009, FERA co-sponsor Senator Patrick Leahy indicated that passage of the FERA would help law enforcement "track down and **punish**" people. 155 Cong. Rec. S4409 (daily ed. Apr. 20, 2009)("As the economic crisis worsened last fall, I called upon Federal law enforcement to track down and **punish** those who were responsible for the corporate and mortgage frauds that helped make the economic downturn far worse than anyone predicted. This year, as Congress reconvened, I joined with Senator Grassley to draft and introduce [FERA], the legislation we consider today, which will provide the new tools and resources needed by law enforcement to carry out this effort.")(emphasis added). On April 23, 2009, Senator Leahy again indicated that his amendments were meant to **punish.** Congressional Record: April 23, 2009 (Senate) at S4630 ("If fraud goes unprosecuted and **unpunished,** then victims across America lose money.")(emphasis added). On April 27, 2009, Senator Charles Grassley, author of the modern FCA, argued that the FCA amendments he sponsored would ensure **punishment.** 155 Cong. Rec. S4737 (daily ed. Apr. 27, 2009)("This legislation fixes this, thus ensuring that no fraud can go **unpunished** by simply navigating through the legal loopholes.")(emphasis added).

On April 27, 2009, Senate Majority Leader Harry Reid added his voice to the call for **punishment.** 155 Cong. Rec. S4725–S4726 (daily ed. Apr. 27, 2009)("[FERA] provides critical funding and new tools to let law enforcement prosecute and **punish** those responsible for the mortgage and corporate frauds that have hurt countless hard-working Americans and led to the worst financial crisis in decades.")(emphasis added).

Senator Leahy has also praised the **punitive** use of and effect of the FCA. 2008 WL 511861 (F.D.C.H. Feb. 27, 2008)("Today again in the midst of war and facing reports of billions lost to fraud and waste in Iraq and Afghanistan, we are considering important new improvements to the [FCA]—not only to **punish** and deter those who seek to defraud our nation, but also to recover billions in taxpayer dollars stolen from the public trust ... [The FCA] has been used to **punish** contractors selling defective body armor to our police ... to **punish** health care and drug companies for defrauding billions from Medicaid and Medicare ....")(emphasis added).

These declarations of legislative intent regarding FERA, including the FCA amendments, are consistent with Congress's previous view that the FCA is intended to be **punitive.** For example, when Attorney General John Ashcroft appeared before Congress in 2002, Senator Grassley demanded that Ashcroft pledge to continue to use the FCA to **punish** wrongdoing. 2002 WL 1722725 (F.D.C.H.)(July 25, 2002)("[The FCA] is the government's most potent weapon in war on fraud and abuse, and I would appreciate your assurances here today, hence my first question, that you would intend to continue using the [FCA] to **punish** wrongdoing to the fullest extent of the law ... I think your letter said that, but I still would like to ask you.")(emphasis added).

Then Attorney General Ashcroft responded, "Yes sir, the letter reflects the commitment of the Department." *Id.* Current Attorney General and then Deputy Attorney General Eric Holder stated: "Those amendments [to the 1986 FCA] have made the [FCA] our most powerful and effective tool in rooting out and **punishing** fraud in government programs." Remarks of Eric H. Holder, Deputy Attorney General, announcement of Criminal Pleas and Civil Settlements, *United States v. Fresenius* (National Medical Care), Boston, Massachusetts, January 19, 2000 (http://www. usdoj.gov/archiv e/dag/speeches/2000/nmichaelhealthremarks.htm) (emphasis added).

The Relators have identified Government Reports indicating that the FCA is remedial in nature. However, these "reports" are not persuasive because they do not include actual quotes of Congressmen and because a statute may be both punitive and remedial. *See United States v. Halper,* 490 U.S. 435, 447, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)

In addition to the repeated and clear manifestations of Congressional intent regarding the punitive purpose of the FCA and the FERA amendments, Courts have consistently recognized that the FCA punishes those who violate it, with particular attention being paid to the FCA's treble damages clause. The Supreme Court has found that FCA's damages multiplier has a compensatory function as well as a punitive one. *Cook County, Ill. v. U.S. ex rel. Chandler,* 538 U.S. 119, 130, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003).[1] The Supreme Court has also recognized that the

treble damages found in the FCA are "essentially punitive in nature." *PacifiCare Health Systems, Inc. v. Book,* 538 U.S. 401, 405, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003); *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens,* 529 U.S. 765, 784–85, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000);[2] *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 550, 63 S.Ct. 379, 87 L.Ed. 443 (1943). "The very idea of treble damages reveals an intent to **punish** past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)(emphasis added).

In addition to the Supreme Court, Circuit and District Courts have also recognized the punitive nature of FCA damages. *See i.e. United States ex rel. A+ Homecare, Inc. v. Medshares Management Group, Inc.,* 400 F.3d 428, 445 (6th Cir. 2005), *cert. denied,* 546 U.S. 1063, 126 S.Ct. 797, 163 L.Ed.2d 630 (2005); *United States ex rel. Roby v. Boeing Co.,* 302 F.3d 637, 641(6th Cir.2002), *cert. denied,* 539 U.S. 969, 123 S.Ct. 2641, 156 L.Ed.2d 675 (2003); *United States v. Bank of Farmington,* 166 F.3d 853, 857 (7th Cir.1999); *United States v. Bourseau,* 531 F.3d 1159, 1164 (9th Cir.2008); *United States v. Mackby,* 261 F.3d 821, 830 (9th Cir.2001); *United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1360 (11th Cir.2006); *United States v. Killough,* 848 F.2d 1523, 1533 (11th Cir.1988); *United States ex rel. Pogue v. Diabetes Treatment Centers of America,* 474 F.Supp.2d 75, 87 (D.D.C. 2007); *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.,* No. 8:06–CV–

---

1. The Relators assert that, in *Chandler,* the Supreme Court explains why the FCA remains a remedial statute following the 1986 amendments thereto. While this may or may not be accurate, the *Chandler* Court nevertheless found that the FCA's treble damages provision has a punitive function.

2. The Relators assert that the *Stevens* Court was not undertaking a detailed analysis of the FCA for Constitutional purposes as it did in *Marcus.* However, both the *Marcus* and *Stevens* Courts indicate that the FCA has punitive aspects.

40–T–24MAP, 2007 WL 4885468 at *7 (M.D.Fla. Nov. 30, 2007); *United States ex rel. Brinlee v. AECOM Government Services, Inc.,* No. 2:04 CV 310, 2007 WL 496623 at *4 (W.D.La. Feb. 8, 2007); *United States ex rel. Oliver v. The Parsons Corp.,* 498 F.Supp.2d 1260, 1289 n. 30 (C.D.Cal.2006).

Thus, Congress intended to impose punishment when it enacted the FCA and the amendments thereto. The Supreme Courts and lower courts have also regularly determined that the FCA imposes punishment. In addition, the Relators have presented no cases suggesting that retroactive application of the amendments to the FCA, particularly with the treble damages provision, would be Constitutional. Therefore, retroactive application of the amendments to the FCA violates the Ex Post Facto Clause because retroactive application of the amendments to the FCA would impose punishment for acts that were not punishable prior to enactment of the amendments.

### Punitive In Purpose or Effect

However, even if Congress had not clearly intended for the FCA to punish those who violate it, the FERA amendments to the FCA would still be unconstitutional pursuant to the Ex Post Facto Clause. The FERA amendments would be unconstitutional because retroactive legislation must clear a second hurdle, a hurdle that is not cleared by the FERA amendments to the FCA.

If the intent of the legislation was to enact a regulatory scheme that is civil and nonpunitive, a court must further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (*Kansas,* 521 U.S. at 361, 117 S.Ct. 2072, quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). When conducting this examina-tion, only the "clearest proof" will be enough to override legislative intent and transform a civil remedy into a criminal penalty. *Id.*

■ When examining the effects of the FCA statutory scheme, courts use the seven factors noted in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Id.* at 97, 123 S.Ct. 1140. The seven factors are: (1)whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether operation of the sanction will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assigned to the sanction; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554. While these factors are not exhaustive nor dispositive, they provide a framework for the analysis. *Smith,* 538 U.S. at 97, 123 S.Ct. 1140.

### 1. Affirmative Disability or Restraint?

An affirmative disability or restraint is normally understood to be a sanction approaching imprisonment. *Cutshall v. Sundquist,* 193 F.3d 466, 474 (6th Cir.1999)(citing *Herbert v. Billy,* 160 F.3d 1131, 1137 (6th Cir.1998)), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000). Sanctions provided under the civil FCA, which is at issue here, do not approach imprisonment. This factor weighs in favor of a finding of civil purpose or effect.

### 2. Historically Regarded As Punishment?

As determined above, FCA sanctions have historically been regarded, at least in

part, as punitive. This factor weighs in favor of a finding that the FCA sanctions are punitive in nature and effect.

### 3. Scienter Required?

An FCA violation requires scienter. *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1477 (9th Cir.1996)(citing *United States ex rel. Anderson v. Northern Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir.1995)("For a qui tam action to survive summary judgment, the relator must produce sufficient evidence to support an inference of knowing fraud."), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996)), *cert. denied,* 519 U.S. 865, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996); *United States ex rel. Farmer v. City of Houston,* 523 F.3d 333, 337 (5th Cir.2008). This factor weighs in favor of a finding that the FCA sanctions are punitive in nature and effect.

### 4. Punishment–Retribution and Deterrence Promoted?

Sanctions provided in the civil version of the FCA are intended to deter conduct. *United States ex rel. Roby,* 302 F.3d at 645. However, the fact that deterrence is one purpose of FCA sanctions does not render FCA sanctions punitive for purposes of Ex–Post–Facto–Clause analysis. *Doe v. Bredesen,* 507 F.3d 998, 1005 (6th Cir.2007), *cert. denied,* —— U.S. ——, 129 S.Ct. 287, 172 L.Ed.2d 210 (2008). Yet, FCA sanctions also, as set forth above, have a strong punitive purpose and deterrence is one purpose of punishment. Therefore, this factor weighs in favor of a finding that the FCA sanctions are punitive in nature and effect.

### 5. Behavior Already a Crime?

The submission of false claims to the Government has been a crime since the inception of the FCA. However, in 1982 Congress separated the criminal version of the FCA from the civil version. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 734 (10th Cir.2006). But courts continue to look to caselaw interpreting the civil version of the FCA to construe the criminal version of the FCA. *See United States v. McBride,* 362 F.3d 360, 371 (6th Cir.2004). Further, the same conduct may be punishable under both the criminal and civil versions of the FCA. Yet, because behavior proscribed by the civil version of the FCA may also be sanctioned as a crime under the criminal version of the FCA, this factor weighs in favor of a finding of civil purpose or effect for the civil version of the FCA.

### 6. Alternative Purpose Assigned?

In this case, there is an alternative purpose assigned. The Supreme Court has found that FCA's damages multiplier has both a compensatory function as well as a punitive one. *Cook County, Ill.,* 538 U.S. at 130, 123 S.Ct. 1239. Thus, a purpose of the FCA's sanctions alternative to being punitive is to compensate for loss. Therefore, this factor weighs in favor of a finding of civil purpose or effect for the civil version of the FCA.

### 7. Excessive In Relation To Alternative Purpose?

The alternative purpose identified for the FCA is to compensate for loss. However, the sanctions recoverable under the FCA can far exceed those necessary to compensate the Government for fraud. More specifically, the FCA provides for a "civil penalty of not less than $5,000 and not more than $10,000 ... plus three times the amount of damages which the Government sustains...." 31 U.S.C. § 3729(a)(1)(G); *see e.g. Halper,* 490 U.S. at 449, 109 S.Ct. 1892(penalties of $130,000 for an actual loss of $585 bore "no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as punishment in the plain meaning of the word ..."). Since the sanctions recoverable under the FCA can

far exceed those necessary to compensate the Government for its loss, this factor weighs in of a finding that the FCA sanctions, particularly the treble damages provision, are punitive in nature and effect.

In sum, four of the seven *Kennedy* factors weigh in favor of finding that the civil FCA sanctions are punitive in nature and effect. Further, the "alternative purpose assigned" factor, which weighs in favor of a finding of civil purpose or effect, is more than overcome by the determination under the "excessive in relation to alternative purpose" factor that the sanctions recoverable can far exceed the sanctions necessary to compensate the Government for its loss. Finally, the Relators agree that the FCA's treble damages provision has some punitive aspects. (Relator's Mem. In Opp'n pp. 15, 26 (doc. # 719)). As a result, the civil version of the FCA is punitive in purpose and effect.

## CONCLUSION

The FCA as amended by FERA may not be applied to the Defendants in this case. A plain reading of the retroactivity clause results in the conclusion that the FCA as amended by FERA does not apply to this case. Also, retroactive application of the new FCA language to these Defendants violates the Ex Post Facto Clause. Retroactive application violates the Ex Post Facto Clause because Congress intended for the FCA to be punitive and because FCA sanctions are punitive in purpose and effect.

The Relators have requested oral argument on this Motion. This Court has been fully informed by and has not imposed page limits on the Briefs. There is, therefore, no need for oral argument.

Briefing on the issue of "whether the record on the Quality Case should be reopened and what should be done if the record is not reopened" had been stayed pending this decision. That stay is now lifted and the Relators have until not later than twenty-one (21) days following entry of this Order to respond to the Memorandum that the Defendants have already filed on this issue. A reply may be then filed by the Defendants in accordance with Local Rule 7.2(a)(2).