[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11077
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 22, 2010
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-02126-IPJ

CORPORATE AMERICA CREDIT UNION,

Plaintiff-Appellee,

versus

JOSEPH HERBST, et al.,

Defendants,

RUBINBROWN LLP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 22, 2010)

Before BLACK, PRYOR and COX, Circuit Judges.

PER CURIAM:

Plaintiff Corporate America Credit Union provides liquidity and other services to retail credit unions in Alabama. It is one of twenty-six corporate credit union members of U.S. Central Federal Credit Union, a wholesale credit union. Corporate America held a debt-like interest in U.S. Central called Members' Capital Shares. In 2008, U.S. Central reported a writedown of subprime-mortgage investments. As a result, its credit and debt ratings were downgraded. To improve its capital position and prevent additional downgrades by rating agencies, U.S. Central requested that its twenty-six members exchange their Members' Capital Shares for equity-like Paid-In-Capital Shares.

U.S. Central retained Defendant RubinBrown LLP to prepare a valuation of the Paid-In-Capital Shares, and these parties executed an agreement related to the services that RubinBrown would perform. This agreement contained a binding arbitration clause stating, "[t]he parties agree that any and all disputes between them in any way concerning the services provided by RubinBrown pursuant to the Agreement . . . shall be committed to binding arbitration . . . ." (Dkt. 23-1 at 14.)

RubinBrown produced a valuation report, the first page of which noted that the report was prepared for "[i]nternal purposes for use by U.S. Central, its 26 corporate members, and their respective auditors . . . ." (Dkt. 34-1 at 4.) The report represents that the Paid-In-Capital Shares were worth at least $450 million, and Corporate

2

America asserts that it relied on this report in agreeing to exchange its Members' Capital Shares in U.S. Central for Paid-In-Capital Shares. It alleges that soon after the exchange, U.S. Central was placed in conservatorship, and the Paid-In-Capital Shares were worthless.

Corporate America sued various directors of U.S Central alleging securities fraud and breach of fiduciary duty. It also sued RubinBrown alleging professional negligence and state securities law violations arising from the valuation of the Paid-In-Capital Shares. Relying on the arbitration agreement between RubinBrown and U.S. Central, RubinBrown moved to dismiss or alternatively to stay and compel arbitration of Corporate America's claims. RubinBrown also moved to dismiss for want of personal jurisdiction. The district court denied the motions, and RubinBrown filed this interlocutory appeal challenging the denial of its motion to compel arbitration.

Corporate America is not a party to the contract between RubinBrown and U.S. Central. RubinBrown argues that Corporate America is a third-party beneficiary of that contract and is therefore bound by its arbitration agreement. In the alternative, RubinBrown argues that Corporate America is estopped from seeking to avoid application of the arbitration agreement because all of Corporate America's claims

against RubinBrown derive from the contract containing the arbitration clause. After review of the record, we conclude that these arguments are without merit.

In some circumstances, a non-signatory may be bound to an arbitration agreement. *See e.g. Infiniti of Mobile, Inc. v. Office*, 727 So. 2d 42, 48 (Ala. 1999). But, an arbitration agreement restricted to the immediate parties does not bind a non-party. *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (citation omitted). "[I]f the language of the arbitration provision is party specific and the description of the parties does not include the nonsignatory, this Court's inquiry is at an end, and we will not permit arbitration of claims against the nonsignatory." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 381 (Ala. 2006) (citation omitted). After review of the record, we agree with the district court's analysis on pages seven through twelve of its order concluding that the arbitration agreement in this case was party specific; it binds U.S. Central and RubinBrown, but it does not bind non-signatories like Corporate America. (Dkt. 41 at 7-12.)

We also conclude that Corporate America should not be compelled to arbitrate its claims under the doctrine of equitable estoppel. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Blinco v. Green Tree Servicing LLC*, 400

F.3d 1308, 1312 (11th Cir. 2005). "The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) *rev'd on other grounds.*, *PacifiCare Heath Sys., Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531 (2003) (citation and quotation omitted). Corporate America's claims arise from alleged negligent and/or fraudulent misrepresentations contained in the valuation report prepared by RubinBrown. (Dkt. 1 at 48, 51, 56-57.) They do not arise from the terms of the contract between RubinBrown and U.S. Central. "The plaintiff's actual dependence on the underlying contract in making out the claim . . . [is] the *sine qua non* of an appropriate situation for applying equitable estoppel." *In re Humana*, 285 F.3d at 976. Because Corporate America's claims are not intertwined with the contract between U.S. Central and RubinBrown, the court did not abuse its discretion in declining to compel arbitration under the doctrine of equitable estoppel.

AFFIRMED.

5